James E. SOMMERVILLE, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

March 10, 1975.

Marvin P. Morton, Jr., Paris, for petitioner.

R. A. Ashley, Jr., Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, for respondent.

## OPINION

FONES, Chief Justice.

Sommerville's second trial, following reversal of his first conviction, resulted in a higher sentence. Nine of the jurors at the second trial acknowledged, on voir dire examination on November 14, 1972, they had read a newspaper article in the November 13, 1972 edition of the Paris Post-Intelli-

gencer, reporting Sommerville's first conviction and a sentence of twenty years and a day.

Thus, the issue mentioned, but neither involved nor decided in Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L. Ed.2d 714 (1973), is presented. Is the rule announced in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), applicable to sentences imposed by a jury having knowledge of the sentence by a prior jury. *Pearce* applies to judge imposed sentences and Sommerville contends its rationale should be extended to jury sentencing, where the jury has knowledge of the verdict and sentence of the prior jury.

Sequentially, the Court in *Pearce* held, (1) where defendant succeeds in getting his first conviction set aside, it is wholly nullified and the slate wiped clean; (2) neither the double jeopardy provision nor the equal protection clause imposes an absolute bar to a more severe sentence upon reconviction; (3) the due process clause requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial; (4) where a judge imposes a more severe sentence at the second trial, his reasons for doing so must affirmatively appear in the record available for review on appeal, and must be based upon objective information concerning identifiable conduct on the part of defendant occurring after the time of the original sentence.

In the instant case, the trial judge approved the jury's verdict of not less than five nor more than twelve years on a charge of first degree burglary, and not less than three nor more than twenty-one years for the offense of assault to commit murder in the first degree. The jury verdict at the first trial resulted in a sentence of three to fifteen years on the offense of assault to commit murder in the first degree, and five years on the other charge. The sentences at both trials are concurrent,

but consecutive to a sentence for murder defendant is presently serving. The newspaper article was in error in reporting that the length of the sentence was twenty years and a day.

A majority of the Court of Criminal Appeals panel refused to extend *Pearce*, being of the opinion that no vindictiveness was indicated by the jury verdict imposing greater punishment at the second trial. The dissenting judge was of the opinion that *Pearce* should be applied because ". . . the jury in this case had the same opportunity to register its disapproval of one who attempts to evade justice as did a judge in the Pearce situation, . . . ."

We granted certiorari, and have heard oral argument.

During the voir dire examination at the second trial, the following occurred:

"MR. MORTON: Your Honor, we have something to present to you that should be presented outside the presence of the jury.

THE COURT: Could it be done after we select the jury before they're sworn.

MR. MORTON: It relates to the jurors qualifications.

THE COURT: All the jurors out here who have not been called go in this room here. You twelve gentlemen do not discuss the case at all and go back in the jury room and remain there until you are called out.

(Prospective jurors leave Courtroom)

MR. MORTON: Yesterday afternoon, there appeared a headline article in the Paris Post Intelligence, headed Somerville trial slated today. I would like to have Your Honor read it. We feel like we should talk to each prospective juror regarding that Article to see if it would prejudice them in any way. That is the only way we know to do it, is to ask them individually outside the presence of the other jurors.

THE COURT: All right, I'll allow you to—we'll bring these twelve in and you can question them about it and we will leave the others outside.

(Twelve prospective jurors brought inside)

MR. KENNON: Gentlemen, how many of you have seen this story in the newspaper here?

(ALL JURORS WITH THE EXCEPTION OF THREE RAISED THEIR HAND).

MR. KENNON: There are three that haven't seen the story. Do they need to read it?

THE COURT: I see no point to that.

GENERAL SCHOONOVER: May it please the Court, the State is objecting to anybody reading it. There has been enough publicity on it already.

MR. KENNON: This is a matter of public record, Your Honor, and we think it's probably appropriate.

THE COURT: Newspaper articles are not evidence. Gentlemen, this is the thing about it. Newspapers are not evidence. This is based on their interpretation of what is going on. What (sic) it interfere in any matter whatsoever in regard to this lawsuit, or would you try the case fairly and impartially on the evidence presented? If it does in any way, of course, I can understand that. It's hard not to read something in the paper and get some opinion about it. If it would effect you in any manner.

(Thereupon, at this time, The Court asked each individual juror if reading this newspaper article would effect their verdict in any manner and each responded with a negative answer).

MR. KENNON: Do any of you believe that just because a man is indicted by a Grand Jury that he is probably guilty of the offense?

JURY: No.

MR. KENNON: Would you hold it against the defendant in any way if he chooses not to take the witness stand?

JURY: No.

MR. KENNON: Pass them to you.

MR. GUINN: Jury satisfactory.

MR. KENNON: Satisfactory."

Returning to *Pearce*, there the Court reasoned that it would be patently unconstitutional to penalize those who choose to exercise the right to appeal and are successful in securing a new trial; that the threat inherent in such a punitive policy would serve to chill the exercise of basic constitutional rights.

"Due to process of law, then, requires that vindictiveness against a defendant for having successfully attached his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.[20]

[20] The existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case. But data have been collected to show that increased sentences on reconviction are far from rare. . ." 395 U.S. at 725, 726, 89 S.Ct. at 2080, 2081.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based

must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

After the decision in *Pearce*, the 4th and 6th Circuit Courts of Appeal extended the rule to jury sentencing, even though the jury had no information about the prior sentence. Levine v. Peyton, 444 F.2d 525 (4th Cir. 1971), cert. denied, 404 U.S. 995, 92 S.Ct. 536, 30 L.Ed.2d 547 (1971); Pendergrass v. Neil, 456 F.2d 469 (6th Cir. 1972), judgment vacated 412 U.S. 935, 93 S.Ct. 2768, 37 L.Ed. 394 (1973). The 5th Circuit held to the contrary in Casias v. Beto, 459 F.2d 54 (5th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1450, 35 L.Ed. 2d 706 (1973), and Chaffin v. Stynchcombe, 455 F.2d 640 (5th Cir. 1972), aff'd., 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).

*Chaffin* involved a harsher sentence at the second trial, by a Georgia jury, following a successful habeas corpus proceeding in the Federal Court. Georgia and Tennessee are among the twelve remaining states that provide for jury sentencing in at least some categories of felony cases.

Significant here is the following rationale from *Chaffin*:

"This case, then, is controlled by the inquiry into possible vindictiveness counseled by *Pearce, Moon,* and *Colten*. The potential for such abuse of the sentencing process by the jury is, we think, *de minimis* in a properly controlled retrial. The first prerequisite for the imposition of a retaliatory penalty is knowledge of the prior sentence. It has been conceded in this case that the jury was not informed of the prior sentence. We have no reason to suspect that this is not customary in a properly tried jury case. It is more likely that the jury will be aware that there was a prior trial, but it does not follow from this that the jury will know whether that trial was on the same charge, or whether it resulted in a conviction or mistrial. Other distin-

guishing factors between jury and judicial sentencing further diminish the possibility of impropriety in jury sentencing. As was true in *Colten,* the second sentence is not meted out by the same judicial authority whose handling of the prior trial was sufficiently unacceptable to have required a reversal of the conviction. Thus, the jury, unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication. Similarly, the jury is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.

In light of these considerations, and where improper and prejudicial information regarding the prior sentence is withheld,[14] there is no basis for holding

14. The State agreed at oral argument that it would be improper to inform the jury of the prior sentence and that *Pearce* might be applied in a case in which, either because of the highly publicized nature of the prior trial or because of some other irregularity, the jury was so informed.

that jury resentencing poses any real threat of vindictiveness.

While it is the prerogative of this Court to disagree with *Chaffin* and extend the *Pearce* rule to jury sentencing, we decline to do so. We agree that jury sentencing, absent knowledge of the prior sentence, is not susceptible to the retaliatory motivations that prompted the *Pearce* decision. The Court of Criminal Appeals opinion in State ex rel. Pinkard v. Henderson, 2 Tenn.Cr.App. 240, 452 S.W.2d 908 (1970), is in accord with that conclusion.

Obviously, the precise effect of knowledge by the jury at a second trial of the sentence meted out at the first trial cannot be assessed in any individual case. The existence of a retaliatory motivation in a particular juror is difficult, if not impossible, to ascertain on voir dire. It may be unknown or nonexistent at the time of the

voir dire examination, but be acquired during the course of the trial.

We do not embrace the theory that jurors are more immune to the human trait of vindictivenss than judges. Granted a judge who has been reversed has a possible motivation for retaliation not attributable to jurors, but the prophylactic rule of *Pearce* is designed to eliminate the possibility of vindictiveness. At the conclusion of the second trial, having determined that defendant is guilty beyond a reasonable doubt, knowledge of a prior jury's sentence on the same charge is almost certain to be a factor given some consideration and providing potential for vindictiveness.

It is a matter of common knowledge that a substantial school of thought exists in this country that the courts are guilty of coddling criminals. Lack of understanding of the criminal law revolution of the 1960s has given impetus to that theory. We disagree with the observation in *Chaffin* that juries are unlikely to be sensitive to the institutional interests in discouraging meritless appeals.

We hold that a juror with knowledge of the verdict and sentence of the prior jury shall be subject to challenge for cause, unless the examination shows, unequivocally, that he can be impartial, and that his judgment will not be affected by such knowledge. Further, with respect to the method of examination, whenever there is believed to be a significant possibility that a juror has knowledge of the jury verdict at a prior trial, or has been exposed to other potentially prejudicial material, the examination of each juror, with respect to his exposure, shall take place outside the presence of other chosen and prospective jurors. An accurate record of such examinations shall be kept by the court reporter. These rules shall be given prospective application only.

However, we adhere to the well settled rule in this State that failure to challenge for cause or if said challenge is not sustained, failure to use any available peremptory challenge to remove the objectionable juror, precludes reliance upon the juror's disqualification upon appeal. See, Wooten v. State, 99 Tenn. 189, 41 S.W. 813 (1897), and earlier cases cited therein, and Tittsworth v. State, 503 S.W.2d 523 (Tenn.Cr.App.1973). No challenge for cause was made on behalf of defendant and all peremptory challenges were available, according to the record before us.

Defendant's first conviction and sentence was set aside and a new trial ordered by the Court of Criminal Appeals. See, Sommerville v. State, 483 S.W.2d 757 (Tenn. Cr.App.1972). By the judgment of that Court, at the defendant's behest, the result of the first trial was wholly nullified and the slate wiped clean. 395 U.S., at 721, 89 S.Ct., at 2078. Defendant was entitled to a new trial by the second jury to determine his guilt or innocence and, if guilty, the appropriate sentence, unencumbered by knowledge of the result of the first trial.

The sentence of the second jury for the maximum punishment for the offense of assault to commit murder in the first degree exceeds the newspaper's erroneously reported verdict by one year, and the actual sentence of the first jury by six years. The jury sentence is tainted with the implication of vindictiveness condemned in *Pearce* as constitutionally impermissible under the due process clause. We are confronted with the combination of State action by virtue of court appointed counsel representing this indigent defendant and an error of constitutional dimension. Thus, we cannot give significance to the waiver rule that should be invoked upon counsel's failure to challenge for cause and use available peremptory challenges.

In *Chaffin,* the Court observes that recent Court of Appeals cases had suggested that an approximation of the *Pearce* limitations could be realized either by instructing the jury that it could return no verdict higher than the former sentence or

by authorizing the judge to reduce the second sentence if it exceeded the sentence of the first jury. We are in accord with the following observation of the Supreme Court, with respect to said suggestions:

". . . Although these alternatives would provide an absolute protection from the possibility of vindictiveness, they would also interfere with ordinary sentencing discretion in a manner more intrusive than contemplated by *Pearce*. They would achieve, in the name of due process, the substance of the result we have declined to approve under the Double Jeopardy Clause." 412 U.S., at 28, 93 S.Ct., at 1984. n. 15.

■ A reduction of the sentence to fifteen years would cure the error in this case. The error which occurred at the first trial could not have affected the judgment of that jury in assessing punishment for the offense. The evidence of defendant's guilt is overwhelming and no right of defendant can be said to be abridged in denying him a new trial on that issue. No error is assigned in this Court challenging the guilty verdict on either charge.

By Chapter 591, Public Acts of 1972 (Adj.S.) the Legislature added the following paragraph to T.C.A. § 40–2701, effective March 30, 1972:

"In the pronouncement of a judgment where a defendant has been retried following an order granting a retrial by a court of this state or, where in obedience to a decision of a court of the United States, it becomes necessary that the jury's verdict be modified to prevent a sentence on the second trial being greater than the verdict pronounced at the first trial, the trial court is hereby authorized to modify the jury's verdict and pronounce judgment accordingly."

■ Where the sentence meted out by a second jury exceeds that imposed by the first jury, said amendment grants express authority to the trial court to remove the enhancement in the punishment by entering a judgment for the same punishment inflicted upon defendant by the first jury. Clearly, the purpose of said amendment is to enable the courts to correct increased punishment on a second trial found to be constitutionally impermissible, without the necessity of a new trial or resubmission to a jury for sentencing only.

■ The statute is not mandatory, but permissive, and its use (other than as mandated by federal courts) must be limited to cases wherein the trial judge makes a finding on a motion for new trial that the harsher sentence of the second jury is the result of knowledge of a former trial and the sentence imposed therein, and vindictiveness. See, Bowers v. State, 512 S.W. 2d 592, at 595 (Tenn.Cr.App.1974).

This Court having found the sentence of the second jury in the instant case to be tainted with vindictiveness, we remand the case to the Criminal Court of Henry County for the entry of a judgment by the trial judge pronouncing the same sentence as the first jury for the offense of assault to commit murder in the first degree, or, in the alternative, in the discretion of the trial judge, to grant a new trial upon that charge.

■ The verdict of the jury at the second trial for the offense of first degree burglary is affirmed. The newspaper article read by the jurors contained no reference to any charge, conviction or sentence other than assault with intent to commit murder.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.