STATE of Tennessee, Appellee,

v.

Raymond Eugene TEAGUE, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Oct. 29, 1984.

Robert J. Batson, Jr., Thomas M. Fleming, Chattanooga, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Wayne E. Uhl, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Chief Justice.

This is a direct appeal of a death penalty. In an earlier trial, the defendant was convicted of murder in the first degree and was sentenced to death by electrocution for the killing of his ex-wife, Terri Teague. The conviction was affirmed on appeal, but the sentence of death was reversed and the case was remanded for a re-sentencing hearing. *State v. Teague,* 645 S.W.2d 392 (Tenn.1983). In the re-sentencing hearing, the jury again fixed defendant's sentence as death by electrocution. It is from this sentence that the present appeal is taken.

In seeking the penalty of death in the re-sentencing hearing, the state relied on, and the jury found, two aggravating circumstances to exist.

(1) The defendant was previously convicted of a felony other than the present charge, which involved the use or threat of violence to the person. *See* T.C.A. § 39–2–203(i)(2).

(2) The murder was committed for the purpose of avoiding, interfering with or preventing a lawful arrest or prosecution

of the defendant or another. *See* T.C.A. § 39-2-203(i)(6).

The jury also found that there were no mitigating circumstances "sufficiently substantial to outweigh the aggravating circumstances."

In our opinion, the evidence supports and justifies the jury's verdict imposing the sentence of death by electrocution on the defendant for the murder in the first degree of his ex-wife, Terri Teague.

The defendant has questioned numerous rulings by the trial judge on the admissibility of evidence, insisting that "a great deal" of evidence was not germane or relevant to the statutory aggravating circumstances relied on by the state, or was impermissible hearsay. The defendant also insists that the trial court erred in permitting the state to rely on defendant's conviction as an accessory before the fact to second-degree murder as an aggravating circumstance, questioning the timing of the conviction and the fact that the conviction was predicated on a plea of nolo contendere, and insisting that there is nothing in the record to support a finding that the conviction was for a felony, which involved the use or threat of violence to the person.

While not developed to the extent that it was in the first trial, the state was permitted to introduce background evidence relevant to the murder of Terri Teague, but not directly relevant to any statutory aggravating circumstance relied on by the state in seeking the death penalty as punishment for the murder of Mrs. Teague. This evidence showed that Mrs. Teague's apartment had been forcibly entered and that Mrs. Teague had been drowned in the bathtub in her apartment. The jury also was informed that the defendant had been arrested on the night of the murder, while driving with two other men in the subdivision where the victim lived, and that the defendant was armed with a pistol. The defendant's two companions testified that Teague told them that he had killed his former wife.

Evidence also was introduced which showed that Terri Teague had shot and killed John Mark Edmonds. Terri cooperated with the police in their investigation of the killing and taped conversations between herself and the defendant. She also was a witness at the grand jury hearings. The defendant was indicted for first degree murder and accessory before the fact to first degree murder in the death of Edmonds. The state's theory of the Edmonds killing was that the defendant was the culpable person and had used and incited Terri to kill Edmonds.

Jimmy Cook, one of defendant's companions on the night Terri Teague was drowned, testified that the defendant had said the Edmonds case would never go to court if Terri were "out of the way."

On June 15, 1982, the defendant pleaded nolo contendere to the charge of accessory before the fact to murder in the second degree in the Edmonds case and was convicted and sentenced to serve ten years in the state penitentiary.

The defendant's proof in mitigation consisted of several friends and acquaintances, who testified to his good character as a father, friend, and worker. Employees at the Hamilton County Jail testified defendant was a model prisoner. A minister working with prisoners in the state penitentiary, testified as to defendant's adjustment to prison routine, his aid in solving the problems of other prisoners, and his obvious love and concern for his children. Defendant's mother testified he was a good son and father. His former attorney in the Edmonds case testified that he had advised defendant that the state could never make a case in the Edmonds killing and that defendant would probably be acquitted.

■ The defendant questions the introduction of background evidence concerning the murder, insisting that in the sentencing proceeding only evidence relevant to aggravating and mitigating circumstances should have been allowed at the hearing. Guidelines for re-sentencing hearings in general have been set out in *Farris v. State*, 535 S.W.2d 608, 621 (Tenn.1976); *Hunter v. State*, 496 S.W.2d 900, 903 (Tenn.1972);

and in *Huffman v. State*, 200 Tenn. 487, 292 S.W.2d 738, 743 (1956). Under these guidelines, evidence of how the crime was committed, the injuries, and aggravating and mitigating factors are admissible. There appears to be no reason why such guidelines, carefully limiting evidence to the essential background, should not apply in capital cases in order to ensure that the jury acts from a base of knowledge in sentencing the defendant. *See e.g. Blankenship v. State*, 251 Ga. 621, 308 S.E.2d 369, 371 (1983) (parties at capital re-sentencing are entitled to offer evidence relating to circumstances of crime.)

■ In the course of giving background information, the officer who arrested Teague near the victim's house testified that he heard a metallic noise hit the door of the truck next to Teague and that he found a cocked and loaded .45 Colt lying below the seat "where Mr. Teague had dropped it." The state used this incident to cross-examine character witnesses called by the defendant by showing that the defendant's behavior in riding around with a gun late at night was unknown to them or contrary to their opinion of him as a good worker and parent. We see no basic error in the reference to the gun incident in cross-examining character witnesses. *See Paine, Tennessee Law of Evidence* § 21 (1974).

Defendant has cited us to several statements in the record, which he insists are inadmissible hearsay and are violative of the right to confrontation granted him by the Sixth Amendment. We find no merit in these contentions. The admissibility of three of the statements cited was not questioned by the defendant. The fourth objection—that is, to testimony that Mrs. Teague was afraid to take a bath—was sustained and, could not therefore be a factor in the jury's decision.

■ Defendant also insists that the state improperly cross-examined the defendant's mother, getting into the record information that was not otherwise admissible, and that the trial court erred in not declaring a mistrial. Mrs. Quarles testified on direct examination that the defendant had been a good son and had not given her any trouble of any kind other than the present case and the Edmonds case. On cross-examination the state asked if the defendant had been in any other trouble. When the witness answered "No" to the general question, the assistant district attorney general asked specifically, "Didn't you express your concern to me that you felt Randy was planning to kill somebody [in July, 1978]?" There was an objection by counsel to the question, and it was not answered. After a jury-out hearing, defendant's objection was sustained and his motion for mistrial was overruled. The judge then instructed the jury to disregard the question. With the record in this state, we find nothing to indicate that the overruling of the mistrial motion was an abuse of the trial judge's discretion, nor is there any indication that the asking of the question by the state affirmatively affected the jury's decision. *State v. Compton*, 642 S.W.2d 745, 746 (Tenn.Crim.App.1982).

■ The defendant also questions ruling by the trial judge which kept from the jury evidence of the victim's character. The defendant wanted to show that Terri Teague had "cooly" killed Edmonds and that she had no concern for her children. Defense counsel also wanted to cross-examine witnesses called by the state about the victim's promiscuity, use of drugs, and possible embezzlement from her employer. In a sentencing hearing in a capital case, the jury must be permitted to consider any relevant mitigating evidence such as the defendant's character, record, or the circumstances of the offense. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Cozzolino v. State*, 584 S.W.2d 765 (Tenn.1979). However, evidence of the defects in the victim's character of the nature sought to be introduced in the re-sentencing hearing is not relevant mitigating evidence and consequently, was properly excluded.

■ Defendant insists that the conviction of the defendant as an accessory before the fact of murder in the second de-

gree, upon his plea of nolo contendere, may not be used to prove that the defendant had been previously convicted of a felony other than the present charge, which involved the use or threat of violence to the person—a statutory aggravating circumstance found by the jury in this case. *See* T.C.A. § 39–2–203(i)(2). In support of his argument, defendant points out that Rule 11(e) of the Tennessee Rules of Criminal Procedure provides in part that evidence of a plea of nolo contendere is inadmissible in any civil or criminal proceeding against the person who made the plea. The rule relied on by the defendant is based on FED.R. CRIM.P. 11(e) and was intended to prohibit the use of the plea to support an inference of guilt or as an admission against interest. FED.R.CRIM.P. 11, Notes of Advisory Committee, 1975 Amendment note to Subsection (e)(6) and 1980 Amendment Note. A conviction based on the plea, however, may be used to enhance punishment in the same manner as a conviction after a not guilty plea, unless there is a specific statute to the contrary. *See United States v. Williams,* 642 F.2d 136, 139 (5th Cir.1981). *See also People v. Goodwin,* 593 P.2d 326 (Colo.1979); *Miller v. State,* 162 Ga.App. 730, 292 S.E.2d 102, 105–106 (1982); 24B C.J.S. Criminal Law § 1960(1) (1962); 21 Am.Jur.2d, Criminal Law § 499 (1981); Annot. 89 A.L.R.2d 540, §§ 42–50 (1963). We have no statute or Rule of Criminal Procedure that prohibits the use of a conviction on a plea of nolo contendere to enhance punishment.

▮ Defendant further argues that the nolo contendere plea was invalid because the judge accepting the plea failed to follow the requirements of Rule 11(c) of the Tennessee Rules of Criminal Procedure to insure that defendant understood the consequences of the plea. This issue was not raised in the trial court until the motion for new trial was filed. We do have in the record, as an exhibit to the motion for new trial, the colloquy between the trial judge, the defendant, and defendant's counsel at the time the plea of nolo contendere was accepted. It is apparent from the colloquy that the plea was voluntary and that the defendant understood that he was losing his right to a jury trial and cross-examination. Further, it contains assurances of the defense counsel that the defendant fully understood what he was doing. While the trial judge could have paid more attention to detail and followed exactly the admonition of Rule 11, the purposes of the rule were carried out by the procedure followed, that is, insuring the defendant made an informed plea and that plea agreements are brought out in open court. *See* Advisory Committee Note 1983, FED.R. CRIM.P. 11(h). *See also State v. Miller,* 634 S.W.2d 615 (Tenn.Crim.App.1981); 2A Moores Federal Practice ¶ 11.05[2] (2d ed. 1984).

▮ The defendant contends that there is no evidence that his conviction as an accessory before the fact to second degree murder is a felony involving the use or threat of violence to the person, and that it should not have been admitted to prove the aggravated circumstance set forth in T.C.A. § 39–2–203(i)(2). We see no merit in this contention. An accessory before the fact is a principal offender and is treated as such. T.C.A. § 39–1–302. Murder necessarily involves violence to a person. T.C.A. §§ 39–2–201 and 39–2–211(a). The fact the defendant did not fire the shot that killed Edmunds should make no difference since as an accessory he moved, incited, counselled, hired, commanded, or procured the murder. T.C.A. § 39–1–301.

The defendant also questions whether his conviction as an accessory before the fact to second degree murder was a "previous" conviction within the contemplation of the death penalty statute. This court pointed out in *State v. Caldwell,* 671 S.W.2d 459, 465 (Tenn.1984) that:

The language in [39–2–203(i)(2)], "previously convicted" clearly indicates that the date of the conviction, not of the commission of the crime, is the important factor. The order in which the crimes were actually committed is irrelevant, as long as the convictions have been entered

before the sentencing hearing at which they are introduced into evidence.

■ Teague's plea and conviction as an accessory before the fact to second degree murder occurred after Teague's first trial in this case, but before the re-sentencing hearing and, consequently, may be used as an aggravating factor. *Elledge v. State*, 408 So.2d 1021, 1022 (Fla.1982).

■ The defendant also raises a number of issues in relation to the *voir dire*. The defendant insists that the trial judge abused his discretion in refusing individual sequestered examination of prospective jurors, that jurors qualified to serve under the test set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), were improperly excluded for cause, that *voir dire* by the defendant was improperly limited, and that the jury was "death qualified," denying the defendant a jury composed of a representative cross-section of the community. We have considered these issues and found them to be without merit. There is nothing in the record to indicate that any prejudice resulted from group *voir dire* in this case. *See State v. Simon* 635 S.W.2d 498, 506 (Tenn.1982). The argument that the denial of individual sequestered *voir dire* maximizes the "untoward effects of death-qualification" was rejected in *State v. Workman*, 667 S.W.2d 44, 49 (Tenn.1984). Further, the record shows that the trial judge excused for cause only those prospective jurors who stated unequivocally that they could not follow the law regarding the death penalty. Where there was any possible ambiguity in answers given by a prospective juror to qualifying questions, the trial judge permitted counsel for the state and for the defendant to question prospective jurors fully, and cut short the questioning only when answers left no leeway for possible rehabilitation of the juror. We approved this procedure in *State v. Strouth*, 620 S.W.2d 467 (Tenn.1981).

■ The defendant has two issues directed to the trial court's instructions to the jury. In the first, the defendant questions the sufficiency of the instruction on circumstantial evidence. The trial court defined both circumstantial and direct evidence, but did not include in the instructions the statement that to warrant a conviction on circumstantial evidence, the proof must exclude every other reasonable theory or hypothesis. The defendant made no request for such an instruction. Where the evidence is both direct and circumstantial, as in this case, the failure to give such an instruction is not error in the absence of a request. *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn.1975).

■ The defendant also insists that the trial court erred in failing to include in its instructions nonstatutory mitigating circumstances, as requested by the defendant. The trial court instructed the jury that it should "consider ... any mitigating circumstance, which shall include, but are not limited to" the statutory mitigating circumstances, which he then read to the jury. The court refused to specifically cite seven additional circumstances, as mitigating, requested by the defendant, including the fact that the defendant was employed, was a good parent, a member of the Army Reserve, and other similar testimony. In doing so, the judge properly pointed out that they were matters of evidence to be argued to the jury.

■ Appellant also insists that T.C.A. § 39–2–203(g) is unconstitutional in that it makes the death penalty mandatory under certain circumstances. A similar attack of the constitutionality of the sentencing phase of the Tennessee Death Penalty Act has been made in other cases and has been found to be without merit. *State v. Teague*, 645 S.W.2d 392 (Tenn.1983); *State v. Dicks*, 615 S.W.2d 126 (Tenn.1981), *cert. denied*, 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981).

We have concluded from our review of the record that no reversible error was committed in the re-sentencing hearing, and that the sentence imposed by the jury is sustained by the evidence. The sentence of death by electrocution imposed on defendant is affirmed. The death sentence

will be carried out on the 15th day of January, 1985, unless stayed by appropriate authority. Costs are adjudged against defendant.

FONES, HARBISON and DROWOTA, JJ., concur.

BROCK, Justice, dissenting.

For the reasons stated in my dissent in *State v. Dicks*, 615 S.W.2d 126, 132 (Tenn. 1981), I would hold that the death penalty is unconstitutional and the proper sentence in this case is life in the penitentiary.