STATE of Tennessee, Plaintiff-Appellee,

v.

Walter Keith JOHNSON,
Defendant-Appellant.

Supreme Court of Tennessee,
at Knoxville.

Oct. 28, 1985.

Rehearing Denied Jan. 14, 1986.

Wayne E. Uhl, Asst. Atty. Gen. Nashville, for plaintiff-appellee; W.J. Michael Cody, Atty. Gen., of counsel.

William R. Heck, Chattanooga, for defendant-appellant.

## OPINION

PER CURIAM.

In this case the defendant Johnson was convicted of first degree murder and sentenced to death for the killing of Raymond Harris. His conviction was reviewed and affirmed by this Court in *State v. Johnson*, Tenn., 661 S.W.2d 854 (1983); however, his death sentence was set aside and the case was remanded to the trial court for a new sentencing hearing and the imposition of a new sentence. Following the second sentencing hearing a jury again has imposed the death penalty upon the defendant.

The facts and circumstances of the killing are set forth in our prior opinion but we

will again relate a brief resume of the facts sufficient to provide background for our review of the second death sentence.

In September, 1980, the defendant pawned two .22 caliber rifles to the 84 year old Raymond Harris. These rifles had been stolen by the defendant in a burglary of the residence of a minister at Dunlap, Tennessee. On the early morning of September 8, 1980, the defendant went back to the decedent Harris' home in Hamilton County and demanded the return of these two rifles. When Harris refused, the defendant proceeded forcibly to take the rifles from Harris and in so doing struck the decedent in the head with a heavy glass candlestick knocking him unconscious and fatally injuring him. The evidence indicated that the defendant struck the victim at least twice in the head with some blunt instrument which caused at least two fractures of his skull. The defendant took the two guns in question as well as three others and more than $100.00 which the decedent had on his person. Shortly after the killing the defendant was apprehended and confessed to striking Harris but denied that he intended to kill him or rob him but that he had acted out of fear and in anger.

The jury found aggravating circumstances, T.C.A., Section 39–2–203(i)(2)(7) in that (1) the defendant had been previously convicted of second degree murder in 1975 and (2) that the defendant killed the decedent while robbing him in the instant case. The defense attempted to show mitigation of the offense by the testimony of Mr. James Vandiver, an associate warden of security at the Tennessee State Prison in Nashville, who testified that defendant had been a model prisoner during his incarceration there. Other mitigating evidence was that the defendant had run away from home when he was 13 years of age because his father engaged in abusive treatment of him, that he had an alcohol and drug abuse problem, and that the decedent Harris had struck him first and was reaching for a gun when the defendant hit him with a candlestick. The defendant further testified that most of the guns which decedent Harris accepted in pawn were stolen; he tried to characterize the Harris family as a band of dangerous former moonshiners.

During the voir dire examination of prospective jurors, juror Carolyn Wilkes stated that she needed clarification about "what specifically are you talking about in terms of sentencing, like as far as parole.... If someone is going to get paroled in 5 or 10 years ... that's going to weigh heavily on my mind, so that is the reason I pose the question." The prosecuting attorney replied that the only consideration for the jury would be whether to impose life imprisonment or death by electrocution. After a bench conference between the court and attorneys, the judge explained to the juror:

"I'll answer your question for you with actually a non-answer. The attorney general cannot answer your question. You can only consider death by electrocution or life imprisonment. He cannot answer any further than that. He is prohibited by law from answering any further, and I am also prohibited from answering any further. So you get a non-answer."

Wilkes was accepted as a juror. Moreover, the idea of a parole was indirectly introduced later in the trial when it was revealed that the defendant had been released from parole on a second degree murder sentence when this killing occurred and that he had not served his full sentence for that crime.

The defendant argues that the response of the trial court was error, that the trial judge did not sufficiently explain to the jury "that its deliberations must be governed exclusively by the court's instructions regarding punishment alternatives given at the close of the proof" and that the response given by the trial court only invited speculation regarding the possibility of parole.

■ Our cases have long held that it is improper for a jury to consider parole when fixing a defendant's punishment. *Keith v. State*, 218 Tenn. 395, 401–406, 403 S.W.2d 758, 761–764 (1966); *Graham v. State*, 202

Tenn. 423, 304 S.W.2d 622 (1957); *Williams v. State*, 191 Tenn. 456, 234 S.W.2d 993 (1950); *Porter v. State*, 177 Tenn. 515, 151 S.W.2d 171, 174 (1941). *See, also, Farris v. State*, Tenn., 535 S.W.2d 608 (1976). However, in these cases, which are relied upon by the defendant, the issue of parole of a defendant's sentence did not arise until after the jury had been chosen, instructions given and deliberations had begun. But even in those cases it was held to be enough that the trial court had made it clear to the jury that the question of parole should not enter their deliberations and they were not to consider that factor in fixing punishment. In the instant case the prosecuting attorney and the trial judge both explained to juror Wilkes that "you can only consider death by electrocution or life imprisonment." This admonition should have clearly conveyed to the jury that they could not consider anything else such as the possibility of parole. Perhaps the trial judge's response could have been in more emphatic terms; the preferable response to a juror's inquiry about parole is to instruct the jury to limit their deliberations to the instructions given them at the close of the evidence. *Porter v. State, supra; Hale v. State*, 198 Tenn. 461, 477–478, 281 S.W.2d 51 (1955). Nevertheless, we are of the opinion that the trial court's response in this instance comported with the holdings of our cases, cited above, and is clearly distinguishable from the response disapproved in *State v. Conner*, 241 N.C. 468, 85 S.E.2d 584 (1955) in which the trial judge merely responded: "I cannot answer that question." We find no error.

Next, the defendant complains that the trial court denied his motion for individual voir dire of prospective jurors. The defendant urges that we adopt the rule set out in *Hovey v. Superior Court of Alameda County*, 28 Cal.3d 1, 168 Cal.Rptr. 128, 616 P.2d 1301 (1980), wherein it was held that in capital cases voir dire on "death-qualification" should be done individually and in sequestration.

However, we have previously examined that holding and expressly declined to follow it in *State v. Workman*, Tenn., 667 S.W.2d 44, 49 (1984), *cert. denied,* — U.S. ——, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984). *See, also, State v. Teague*, Tenn., 680 S.W.2d 785, 790 (1984); *State v. Simon*, Tenn., 635 S.W.2d 498, 506 (1982).

■ We have held, however, that whenever it appears to the trial judge that there is a significant possibility that a juror has been exposed to potentially prejudicial material,

> "... the examination of each juror, with respect to his exposure, shall take place outside the presence of other chosen and prospective jurors. An accurate record of such examinations shall be kept by the court reporter. These rules shall be given prospective application only." *Sommerville v. State*, Tenn. 521 S.W.2d 792, 797 (1975).

We adhere to that policy. In the instant case it does not appear that any basis existed for the trial court to invoke the *Sommerville* rule. The defendant has failed to make a showing of prejudice in the instant case. There is no proof in the record of undue publicity and the trial judge indicated a willingness to allow individual voir dire where necessary or appropriate. The instance involving juror Wilkes is not sufficient to establish that a violation of the *Sommerville* rule occurred, since in our opinion, the trial judge's response sufficiently clarified the matter for all of the jurors listening and removed any taint that juror Wilkes' remarks might have caused. In short, we find no error.

■ The defendant moved the trial court for an order requiring the State to disclose whether or not guns taken from the victim's home were stolen. The defendant sought to show that decedent Harris dealt regularly in stolen guns. Thus, prior to trial, he moved that the State be required to disclose to him whether the guns he had taken from Harris, other than the two that he himself had pawned, were stolen. In resisting this motion the State indicated that it did not possess such information. The Court denied the motion, however, on the grounds that it was not materi-

al information. The defendant argued that it was relevant because "the participation of the deceased in unlawful acts in concert with [the defendant] would be regarded as a possible matter in mitigation." We agree with the trial court that the defendant did not show that the requested information was material. His argument that a showing that the victim dealt in stolen property would somehow mitigate his murder of the victim is erroneous; this Court has held that evidence of a victim's character is not relevant to mitigate a murder in a sentencing hearing. *State v. Teague*, Tenn., 680 S.W.2d 785, 788 (1984).

Moreover, the State informed the trial court that it did not possess the information requested by the defendant and Rule 16 of Tennessee Rules of Criminal Procedure does not require that the State actively seek out information which is equally available to the defendant.

■ Finally, the defendant argues that T.C.A., Section 39–2–203(g), provides for a mandatory death sentence. The Court adheres to its previous determinations that this issue is without merit. *State v. Teague*, Tenn., 645 S.W.2d 392, 399 (1983); *State v. Dicks*, Tenn., 615 S.W.2d 126, 131 (1981). Justice Brock, however, continues to adhere to his view, expressed in *State v. Dicks, supra*, that imposition of the death penalty is, in all circumstances, unconstitutional.

The judgment of the trial court is in all things affirmed. Unless stayed by appropriate authority, the death sentence will be carried out on 1st day March, 1986.

FONES and BROCK, Justices, dissenting.

Considering all of the circumstances of this crime, especially the indications that the decision to kill was made on "the spur of the moment," and mindful of the injunction laid down by the Supreme Court in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759 at 1764, 64 L.Ed.2d 398 (1980), that "a capital sentencing scheme must, in short, provide a 'meaningful basis for distinguishing the few cases in which [the penalty] is imposed from the many cases in which it is not,'" we would exercise the authority vested in this Court by T.C.A., Section 39–2–205(c)(1) and Section 39–2–205(d)(2), and set aside the death sentence and remand this case for the entry and enforcement of a judgment imposing a life sentence upon defendant Johnson.