IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2016

**DENNIS L. ROSE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County**
**No. C62353     R. Jerry Beck, Judge**

_____

**No. E2015-00768-CCA-R3-PC – Filed June 2, 2016**

_____

A Sullivan County jury found the Petitioner, Dennis L. Rose, guilty of one count of first degree premeditated murder and two counts of aggravated assault. On appeal, this Court affirmed the Petitioner's sentences and convictions. *State v. Dennis Lee Rose*, No. E2010-00734-CCA-R3-CD, 2012 WL 335548, (Tenn. Crim. App., at Knoxville, Feb. 1, 2012), *perm. app. denied* (Tenn. May 21, 2012). The Petitioner filed a post-conviction petition and the post-conviction court denied relief following a hearing. On appeal, the Petitioner maintains that: (1) the post-conviction court erred when it denied his motion to recuse the District Attorney General's office in light of his post-conviction allegation of prosecutorial misconduct; (2) he received the ineffective assistance of counsel at trial; and (3) the post-conviction court erred in denying him relief on the basis of prosecutorial misconduct. We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Ilya I. Berenshteyn, Bristol, Tennessee, for the appellant, Dennis L. Rose.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Barry Staubus, District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Background and Procedural History**

A Sullivan County Grand jury indicted the Petitioner for one count of first degree premeditated murder and two counts of aggravated assault. The proof at trial showed that the victim stole pills from the Petitioner. In the weeks and days leading up to the offense, the Petitioner made several threats, in the presence of others, regarding the "money" the victim owed to the Petitioner for the stolen pills. On November 13, 2007, the Petitioner pursued the victim and his cousin in their vehicle at speeds of up to eighty miles an hour. Ultimately, the two vehicles came to a stop at the victim's residence, where the victim walked over to the Petitioner's vehicle and, while still in the vehicle through the open driver's side window, the Petitioner stabbed the victim in the area midway between the victim's armpit and hip. The victim died as a result of the stab wound. The jury convicted the Petitioner as charged, and the trial court sentenced him to concurrent sentences of life for the murder conviction and three years for each of the aggravated assault convictions.

The Petitioner appealed these convictions on numerous bases. After review, this Court affirmed the judgments. *Rose*, 2012 WL 335548, at *1.

The Petitioner filed a petition for post-conviction relief on May 23, 2012. The post-conviction court appointed counsel, who filed amended petitions. On October 13, 2013, the Petitioner filed a motion to recuse the Sullivan County Office of the District Attorney General due to the Petitioner's post-conviction allegation of prosecutorial misconduct. On November 19, 2013, the post-conviction court issued an order denying the motion. The post-conviction court reasoned that the Petitioner's allegation that the prosecutor had failed to turn over a witness statement had already been addressed on direct appeal. The post-conviction court noted that issues decided on direct appeal are generally not relitigated in a post-conviction proceeding. In declining to recuse the District Attorney's office, the post-conviction court further found that the Petitioner's motion was "at best vague" and failed to cite any prejudice that would be suffered by the Petitioner if the Sullivan County District Attorney's office was not recused.

**Post-Conviction Hearing**

The Petitioner's trial attorney ("Counsel") testified that, during his more than forty year career, he had represented "a lot" of criminal defendants and handled "numerous" homicide cases. Counsel stated that his theory of the Petitioner's case at trial was that the stabbing was accidental. He said that he did not consider raising self-defense nor did he request an instruction for self-defense. Regarding his failure to request a change of venue, Counsel testified that he was aware of three articles about the stabbing. Two of the articles were published in the newspaper on November 14, 2007, and November 15, 2007, fifteen months before the Petitioner's February 9, 2009 trial. The third article was

2

the "[i]nternet version" of the November 15 article, which included a comment section with six comments.

Counsel testified that he did not seek a change of venue because he "didn't have any trouble picking . . . an unbiased jury." He stated that during voir dire, he would have eliminated any juror indicating bias or prejudice. Counsel agreed that he did not file a motion for individual voir dire. He had no independent recollection of his decision not to do so but stated that he generally only made this request when necessary. Counsel testified that he only sought release of grand jury materials in federal court and was unaware of any such procedure in state court. Counsel explained his decision to not request funds for an investigator, saying that in his experience he had learned that it is better for him to conduct any investigation himself.

Counsel testified that he did not seek funding for an expert witness in serology because there was never "any question that the victim's blood was on" the knife. Further, the defense theory was that the stabbing occurred but that it was an accident. Counsel stated that the evidence and the Petitioner's assertions did not support a self-defense instruction.

Counsel testified that the State made an offer of twenty-five years, which he conveyed to the Petitioner. When asked why he never made a counter-offer, Counsel responded that the Petitioner only authorized him to go to trial.

On cross-examination, Counsel testified that the State had a "very strong case against" the Petitioner but that he also felt there was a strong defense. Counsel agreed that the Petitioner's denial of the chase was inconsistent with witness statements and that the Petitioner's position that he did not know how the victim's blood would have gotten on his knife was "at odds" with the evidence. Counsel agreed that there were no defense witnesses available other than the Petitioner, who testified at trial. Counsel confirmed that the three articles from his file were the only articles published about the incident. Regarding individual voir dire, Counsel reiterated that he did not believe that there was a need to request individual voir dire. He explained that the trial judge's practice was for the trial judge to ask the jury as a whole if anyone knew anything about the case and, if a juror responded affirmatively, then proceed with individual voir dire of that juror.

Counsel testified that the Petitioner's initial statement to the police was, "This was an accident." The Petitioner testified consistently at the preliminary hearing. Counsel identified his request to the trial court to include all lesser-included offenses in the jury instruction. The Petitioner testified consistently at trial with his statement and prior testimony that the stabbing was an accident. Counsel recalled that the Petitioner declined

3

the State's plea offer because he believed that the victim's family would not want him to serve jail time because the stabbing was an accident.

The Petitioner testified that Counsel never spoke with him about a motion to change venue and that he never asked Counsel about filing such a motion because he was unfamiliar with the law. The Petitioner stated that Counsel should have discussed a change of venue with him because of the publicity of the case. The Petitioner was unaware of what evidence was presented to the grand jury but thought Counsel should have sought a release of the grand jury materials. The Petitioner said that he never questioned Counsel's decision to not individually voir dire jurors because he did not know it was possible to do so. He believed, however, that there were jurors who "probably should have been more questioned" and that there were jurors who were "not looking out for [him]."

The Petitioner testified that he sent a letter to Counsel in January 2008 requesting Counsel employ an investigator and a blood spatter expert. In response, Counsel told the Petitioner that "there was no need for that." The Petitioner said that his defense would have been "stronger" had Counsel employed an expert witness or investigator. The Petitioner explained that during the "altercation," he saw two individuals. He did not know the individuals or their names but believed an investigator might be able to locate the individuals who could have possibly testified on his behalf.

The Petitioner testified that a serology expert could have tested his vehicle for blood spatter. He said that the victim reached into his car and choked him while the victim's cousin, Douglas Dorton, swung a blade through the window. The Petitioner pushed the blade away from himself, and the blade "hit" the victim. Because the victim was so close to his vehicle at the time of the stabbing, the Petitioner said there would have to have been blood spatter on his vehicle and "that would have made my defense stronger." The Petitioner agreed that at trial, the evidence showed that there was no blood on his vehicle. He said that his vehicle was not towed to the police department but instead a police officer drove the vehicle to the police department, which may have altered evidence.

The Petitioner testified that he wanted Counsel to request a self-defense instruction. He said that he feared for his life during these events, and, therefore, an instruction was warranted. The Petitioner was unsure whether he asked Counsel about self-defense but stated that Counsel never spoke with him about pursuing a theory of self-defense.

The Petitioner testified that the State offered a twenty-five year sentence on two occasions in exchange for his guilty plea. On the first occasion, Counsel told the

4

Petitioner he was confident in their defense, so the Petitioner said he wanted to proceed to trial. On the second occasion, the Petitioner asked Counsel about a counter-offer of twelve years at 45%, and Counsel again assured him that "we had a good defense and he could beat it." According to the Petitioner, Counsel said that "counteroffering" was not a good idea. Based upon these exchanges, the Petitioner instructed Counsel to proceed to trial.

On cross-examination, the Petitioner testified that he had criminal convictions for burglary, felony theft, criminal simulation, and possession of cocaine with intent to sell or deliver. The Petitioner stated that he believed there were more articles about the incident than the three earlier presented, but he did not have any evidence with him of additional articles about the incident. The Petitioner said that he could not name the jurors that he believed Counsel should have struck from the jury. He agreed that jurors are not to "look out" for him or the State but are to be fair and impartial. As to the blood spatter expert, the Petitioner agreed that blood must be found before a blood spatter expert can analyze and interpret the blood. He further agreed that the testimony at trial was no blood was found on his vehicle.

Following the hearing, the post-conviction court issued a written order denying relief. The post-conviction court concluded that the Petitioner had failed to establish by clear and convincing proof that he was entitled to post-conviction relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner maintains that: (1) the post-conviction court erred when it denied his motion to recuse the District Attorney General's office based upon his claim of prosecutorial misconduct; (2) he received the ineffective assistance of counsel at trial; and (3) the post-conviction court erred in denying him relief on the basis of prosecutorial misconduct.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court;

however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

## A. Motion to Recuse

The Petitioner asserts that, by denying his motion to recuse, the post-conviction court "limited [his] ability to test the issue of prosecutorial misconduct by disallowing the [Petitioner] to call" the prosecutor to testify as a witness at the post-conviction hearing. The State responds that the post-conviction court properly denied the Petitioner's motion to recuse the office of the District Attorney General.

The determination of whether to disqualify the office of the District Attorney General in a criminal case rests within the discretion of the trial court. *State v. Culbreath*, 30 S.W.3d 309, 313 (Tenn. 2000). Appellate review of such a ruling is limited to whether the trial court has abused its discretion. *See State v. Tate*, 925 S.W.2d 548, 550 (Tenn. Crim. App. 1995).

At trial, the State provided the prosecutor's notes to the defense. The prosecutor's notes taken when interviewing Mistri Griffith contained a notation "Defendant made no threats." The Petitioner asserted that the State had failed to turn over exculpatory material pursuant to his discovery request. On appeal, this Court determined that the failure to earlier provide the notes was a "delayed disclosure;" however, the Petitioner had failed to show that he suffered prejudice as a result. *Rose*, 2012 WL 335548, at *13. At the post-conviction hearing, the Petitioner informed the post-conviction court that he intended to call the prosecutor as a witness relevant to his post-conviction claim involving prosecutorial misconduct. The post-conviction court denied the motion to recuse, finding that the issue of the prosecutor failing to turn over his notes until trial had already been determined on direct appeal.

We cannot conclude that the post-conviction court abused its discretion in denying the Petitioner's motion to recuse. As the post-conviction court correctly noted, this Court, on direct appeal, held that the Petitioner had failed to show he suffered prejudice due to the prosecutor's delayed disclosure of the notes. The issue of prosecutorial misconduct had already been reviewed and no resulting prejudice identified. Accordingly, the Petitioner is not entitled to relief as to this issue.

## B. Ineffective Assistance of Counsel

6

The Petitioner asserts that he received ineffective assistance of counsel. Specifically, he asserts that Counsel: (1) failed to seek a change of venue; (2) failed to seek release of grand jury materials; (3) failed to seek individual voir dire of the potential jurors; (4) failed to request funds for an investigator and/or expert for the defense; (5) failed to request self-defense instructions; and (6) failed to make a counter-offer to the State's twenty-five-year offer. The State responds that there is no evidence that Counsel rendered deficient performance or that the Petitioner suffered prejudice from any alleged deficiency. We agree with the State.

In a written order issued after the hearings, the post-conviction court found the Petitioner's testimony at the post-conviction hearing not credible. The post-conviction court further found that Counsel was a credible witness at the hearing. The post-conviction court denied relief, finding that the Petitioner had failed to prove by clear and convincing evidence the allegations set forth in his petition and that he had failed to prove any prejudice from Counsel's alleged deficient performance.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House*

7

*v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *See Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### 1. Venue

"[V]enue may be changed . . . if it appears to the court that, due to undue excitement against the defendant in the county where the offense was committed or any other cause, a fair trial probably could not be had." Tenn. R. Crim. P. 21(a). The ultimate test is whether the jurors who actually sat and rendered verdicts were prejudiced by the pretrial publicity. *State v. Garland*, 617 S.W.2d 176, 187 (Tenn. Crim. App. 1981). Prejudice will not be presumed by a mere showing that there was considerable

pretrial publicity. *Dobbert v. Florida*, 432 U.S. 282, 303 (1977); *State v. Kyger*, 787 S.W.2d 13, 19 (Tenn. Crim. App. 1989).

At the hearing, evidence of three articles published in the local newspaper in November 2007, near the time of the stabbing was presented. One of the three articles was the internet version of one of the printed article and had received six comments on the article. These articles were published almost fifteen months before the Petitioner's trial. According to the testimony at the hearing, the trial court inquired about any potential juror's prior knowledge of the stabbing, and no one indicated any prior knowledge. Counsel, whose testimony the post-conviction court accredited, testified he "didn't have any trouble picking . . . an unbiased jury." The Petitioner's testimony was that he believed some of the jurors should have been questioned more and that he believed that some of the jurors on the panel were "not looking out" for him.

In our view, the Petitioner has only shown that there was very limited pretrial publicity and not even that there was "considerable" publicity. Accordingly, the Petitioner is not entitled to relief as to this issue.

## 2. Grand Jury Materials

The Petitioner asserts that Counsel was ineffective for failing to "file a motion to release grand jury materials." The Petitioner, however, does not direct us to any Tennessee authority allowing for such a release. The Petitioner relies on Federal Rules which have not been adopted by Tennessee. Therefore, we cannot conclude that the Petitioner was prejudiced by Counsel's failure to obtain grand jury materials. *See Owens v. State*, 13 S.W.3d 742, 746 (Tenn. Crim. App. 1999). He is not entitled to relief on this issue.

## 3. Individual Voir Dire

Rule 24(a), Tennessee Rules of Criminal Procedure, provides in part that "[t]he court, upon motion of a party or on its own motion, may direct that any portion of the questioning of a prospective juror be conducted out of the presence of the tentatively selected jurors and other prospective jurors." The word "may," as used in this rule, is permissive rather than obligatory. *State v. Burton*, 751 S.W.2d 440, 452 (Tenn. Crim. App. 1988).

When there is a significant possibility that prospective jurors have been exposed to potentially prejudicial material, the parties are entitled to individual voir dire with respect to each prospective juror's exposure to the prejudicial material. *State v. Claybrook*, 736 S.W.2d 95, 98-101 (Tenn. 1987); *Sommerville v. State*, 521 S.W.2d 792, 797 (Tenn.

1975).  In *State v. Porterfield*, our supreme court said that when "a crime is highly publicized, the better procedure is to grant the defendants individual, sequestered, voir dire."  746 S.W.2d, 441, 447 (Tenn. 1988).  The Court noted however, that "it is only where there is a 'significant possibility' that a juror has been exposed to potentially prejudicial material that individual voir dire is mandated." *Id.*

The ultimate goal of voir dire is to insure that jurors are competent, unbiased, and impartial.  *State v. Cazes*, 875 S.W.2d 253, 262 (Tenn. 1994).  The Petitioner has not established that any juror was unqualified to serve, biased, or partial.  Three fifteen-month old articles from a local publication were submitted during the hearing; however, there was no proof that any juror was exposed to the articles.  Counsel testified that if any juror had indicated prior knowledge of the case, he would have requested individual voir dire.  Furthermore, the Petitioner has failed to establish that trial counsel's request for individual voir dire would have been successful if pursued or that the outcome would have been different if the request had been granted.  Accordingly, the record does not preponderate against the determination of the post-conviction court that the Petitioner did not establish that Counsel was ineffective in selection of the jury.

## 4. Motion to Request Funds for an Investigator or Expert

The Petitioner contends that Counsel should have filed a motion to request funds for an investigator or expert for his defense.  The Petitioner, however, failed to demonstrate Counsel was ineffective for failing to request funds for an investigator or expert for the defense. The Petitioner did not present any evidence at the post-conviction hearing providing information about what evidence an investigator or blood spatter expert would have discovered.  In Tennessee, the petitioner must meet a rigorous test to prove that Counsel's failure to present a witness was prejudicial:

> [W]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, . . . the petitioner [must prove] that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

*State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  Without proof of what that evidence would have shown, and that without the evidence the Petitioner received an unfair trial, we cannot grant the Petitioner relief on this claim.

## 5. Self-Defense Instruction

The Petitioner contends that Counsel was deficient for failing "to object to the absence of the self-defense instructions in the charging of the jury." As the State correctly notes, the record indicates that the jury was charged as to self-defense. The Petitioner is not entitled to relief.

## 6. Counter-offer

The Petitioner asserts that Counsel failed to exercise reasonable diligence by not countering the State's plea offer. The post-conviction court accredited Counsel's testimony that Counsel was not authorized by the Petitioner to do anything other than proceed to trial. The Petitioner is not entitled to relief as to this issue.

## C. Prosecutorial Misconduct

The Petitioner asserts that the State committed prosecutorial misconduct when it failed to turn over "potentially exculpatory material before trial." The State responds that this issue has already been addressed on direct appeal.

Relief under the terms of the Post-Conviction Procedure Act may be granted only when "the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2014). Prosecutorial misconduct qualifies as a constitutional basis for relief. The "touchstone of due process analysis in cases of . . . prosecutorial misconduct is the fairness of the trial . . . ." *Smith v. Phillips*, 455 U.S. 209, 218 (1982).

On direct appeal, the Petitioner raised an issue as to whether "the trial court erred by refusing to allow the defense to use the prosecutor's notes for impeachment and by refusing to allow the defense to make an offer of proof regarding the State's failure to provide the notes to the defense before trial." After the first witness at trial, the State provided the prosecutor's notes to the defense. The prosecutor's notes, taken when interviewing Mistri Griffith, contained the notation "Defendant made no threats." In a jury-out hearing, the prosecutor told the trial court that he spoke to Mistri Griffith along with other witnesses and that he could not recall who made the statement. Counsel then questioned Mistri Griffith about whether she had told the prosecutor that the Petitioner had not made threats to the victim, and Ms. Griffith denied making that statement. On appeal, this Court determined that the notation was a "delayed disclosure" and, therefore, the Petitioner must show that the delay caused prejudice. *Rose*, 2012 WL 335548, at *13.

11

In analyzing the facts of this case, this Court concluded that the Petitioner failed to show prejudice from the delay. *Id.*

While the Petitioner's issue is not framed in exactly the same language in this appeal as it was in his direct appeal, the outcome remains the same. The Petitioner alleges that he is entitled to relief because of prosecutorial misconduct. The prosecutorial misconduct that he bases this claim on is the prosecutor's withholding his notes containing the notation "Defendant made no threats." The statement certainly could be exculpatory if a witness said the Defendant made no threats; however, the trial court allowed Counsel to ask Ms. Griffith about whether she made the statement and she indicated that she did not make that statement to the prosecutor. The Petitioner does not allege that anyone else made the statement. The Petitioner did not then, nor does he now address what prejudice he suffered as a result of the prosecutor providing his notes after the first witness's testimony rather than at some point earlier in time. Accordingly, the Petitioner has failed to show he was prejudiced by prosecutorial misconduct. The Petitioner is not entitled to relief as to this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

12