**STATE of Tennessee, Appellee,**

v.

**Carl Wayne ADKINS, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Feb. 16, 1987.

 

Robert J. Jessee, James T. Bowman, Johnson City, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

On January 29, 1980, defendant was convicted of first degree murder and sentenced to death. On appeal, this Court affirmed the conviction of first degree murder but reversed the death penalty and remanded for a resentencing hearing. *State v. Adkins*, 653 S.W.2d 708 (Tenn. 1983). In October 1984, a resentencing hearing was held and the jury again assessed the death penalty. The trial judge granted defendant's motion for a new sentencing hearing for error in advising that jury that the first jury had imposed the death penalty. The third sentencing hearing was held in June 1985. It also resulted in a sentence of death. On this appeal, defendant asserts errors allegedly committed at that hearing. We find that no errors were committed and affirm the sentence of death.

The State relied upon two aggravating circumstances, to-wit: previous conviction of one or more felonies which involved the use or threat of violence to the person and the murder was committed to avoid, prevent or interfere with the prosecution of defendant for another offense. T.C.A. § 39–2–203(i)(2) and (i)(6).

The State proved that on September 30, 1965, defendant was convicted of murder in the second degree and sentenced to ten years in the State Penitentiary. In further support of the first aggravating circumstance, the State proved that in September 1981 defendant pled guilty to a charge of aggravated assault and was sentenced to two years in the State Penitentiary. The victim of that assault, Shirley Bell, testified that she had lived with defendant for approximately four months and that approximately two months after she left him he shot her in the stomach. As a result she was hospitalized for six months and was

told that she would never walk again. That shooting took place at a trailer belonging to Junior Adams, where Shirley was temporarily residing.

The victim of the murder for which defendant has been convicted in this case was Junior Adams. The murder took place on May 22, 1979. Defendant was indicted for the assault on Shirley Bell on May 14, 1979, and was arrested on that charge the following day. In support of the second aggravating circumstance, the State proved that Junior Adams was an eyewitness to the shooting of Shirley Bell. Shirley Bell testified that on the day Adams was killed she heard defendant ask Adams, "What he was going to tell in court concerning my case," and Adams respond that he was going to tell the (expletive) truth.

The third jury's verdict expressly found that defendant had previously been convicted of murder in the second degree and aggravated assault on Shirley Bell constituting the proscribed aggravating circumstance described in T.C.A. § 39–2–203(i)(2). No mention was made of the other aggravating circumstance. Defendant does not contend that the jury's failure to find that the State had not proven the second aggravating circumstances beyond a reasonable doubt affected the sentence of death and we hold that it does not. Parenthetically, we note that at the first trial of this case aggravating circumstance (i)(6) was presented to the jury at the sentencing hearing on substantially the same evidence as presented to the third sentencing jury. The first jury found that aggravating circumstance to have been proven, justifying the death penalty. On our prior review we found no error in the submission of that aggravating circumstance to that jury and expressly noted that, but for other errors not involving aggravating circumstance (i)(6), the death sentence could have been imposed as a result of that trial. 653 S.W.2d at 716.

Defendant adduced proof that he had been adjudged indigent and was represented by other attorneys at the first trial. His proof further showed that he had issued witness subpoenas for Walt Whaley and Jean Morton, which were returned "Not to be Found," and that a blood alcohol test performed on the victim Junior Adams during the autopsy registered .12. Defendant also proved that he had pled guilty to aggravated assault arising out of the shooting of Shirley Bell and had received a two year sentence and had been confined to jail since his arrest in 1979.

The remainder of the proof offered by defendant was objected to by the State. This objection was sustained by the trial judge. Defendant's offer of proof, adduced outside the presence of the jury, is in the record. It consisted principally of testimony by one Jimmy Burroughs, who was a friend of Bob Morton. Bob Morton was married to Jean Morton, identified in the record as a prostitute. Jean Morton was living with Junior Adams in June 1978 and was present at Adams' trailer when defendant shot Shirley Bell. Burroughs testified that on May 22, 1979, the day Adams was killed, Jean Morton and Junior Adams were at the Varsity Grill at the lunch hour. When Bob Morton came in and asked Jean Morton if she was going to be home that night, she responded that she was spending the night with Junior Adams. Bob Morton sat down elsewhere in the grill but later approached his wife and asked the same question and received the same answer. Morton then told Junior Adams that he would kill him before the night was over.

Burroughs also testified that four or five days before Bob Morton died he confessed to Burroughs that he had killed Junior Adams. Bob Morton died on June 5, 1981, more than two years after Adams was murdered and more than a year after defendant had been convicted and sentenced to death in the trial court, all of which events were well known to the witness Burroughs. The cross examination of Burroughs, focusing on when and to whom he reported the conversation at the grill and the confession shortly before Morton's death, raised very serious questions about the credibility of that testimony if it had been relevant and admissible at the sentencing hearing.

Defendant based several issues upon the exclusion of Burroughs' testimony. He asserts that (1) he should have been granted a new trial on the issue of guilt or innocence since the "death bed confession" of Bob Morton would have established defendant's innocence; (2) the trial judge improperly excluded Burroughs' testimony about Bob Morton's conversation with his wife and Junior Adams at the Varsity Grill; and (3) the trial judge improperly excluded Burroughs' testimony reporting Bob Morton's alleged confession.

■ Defendant has been tried and convicted of the murder of Junior Adams. His appeal asserting errors at that trial has been fully considered by this Court and affirmed in an opinion reported in 653 S.W.2d 708. In *State v. Hartman,* 703 S.W.2d 106 (Tenn.1985), we held that the issue of guilt or innocence is not relevant at a sentencing hearing. At a resentencing hearing, both the State and defendant are entitled to offer evidence relating to the circumstances of the crime so that the sentencing jury will have essential background information "to ensure that the jury acts from a base of knowledge in sentencing the defendant." *See State v. Teague,* 680 S.W.2d 785, 788 (Tenn.1984). It is elementary that the issue of guilt or innocence in a capital case requires a full scale trial and cannot be an adjunct of a resentencing hearing. There are procedures, too well known to require discussion, for obtaining a retrial of guilt or innocence in a capital case; but that issue is not available at a resentencing hearing.

■ It is sufficient to say that the trial court correctly excluded Burroughs' testimony because it was only relevant to the issue of guilt or innocence and not relevant as essential background information. There are other reasons why his testimony was inadmissible which are unnecessary to relate.

Defendant asserts as error the trial judge's denial of his pretrial motion to require the clerk of the trial court to furnish him with a list of all of the persons charged with first degree murder since 1977 and of the disposition of those charges in support of his allegation that the District Attorney General of Washington County was exercising his prosecutorial discretion to seek or not to seek the death penalty in an arbitrary and capricious manner. As a related second prong, defendant suggests that the data requested was necessary so that this Court could conduct an appropriate proportionality review and further charges this Court with limiting such review "to cases which come before the Supreme Court on appeal."

■ The proof that defendant's counsel sought was available as public records and it is their obligation to dig it out and present it in the trial court if they deem it relevant. In addition, this Court has that information, not just from Washington County, but from every county in the State of Tennessee and our proportionality review of death penalty cases since Tennessee Supreme Court Rule 12 (formerly Rule 47) was promulgated in 1978 has been predicated largely on those reports and has never been limited to the cases that have come before us on appeal. There is no merit to this issue.

Defendant says that his right to a speedy trial has been violated. The murder was committed on May 22, 1979; and defendant was tried, convicted and sentenced to death in February 1980. That trial was followed by defendant's motion for a new trial, his appeal to this Court, preparation of a substantial record, briefing and oral argument. This Court's decision was released on March 28, 1983. The first resentencing hearing was held in October 1984, and the second resentencing hearing was held in June 1985.

Defendant does not focus on any of the time intervals between those numerous proceedings as involving undue delay but instead focuses on the fact that there was a five year interval between the first trial and the third sentencing, or second resentencing, hearing. Also, defendant complains about the actions of the Assistant District Attorney in offering as evidence at the first sentencing hearing indictments and ex parte statements from witnesses to the charges in the indictments. Defendant

further complains about the action of the trial judge at the first resentencing hearing in advising the jury that the prior sentencing jury had sentenced defendant to death.

■ It is defendant's contention that those were errors attributable to the State which have implicitly prolonged the proceedings against defendant to the extent that his right to a speedy trial has been violated. Defendant cites no authority, nor have we found any, to the effect that one or more retrials because of errors committed by trial judges or prosecuting attorneys and the resulting delay in reaching finality (if indeed there is such a thing) can provide the basis for a valid speedy trial claim. Defendant is not guaranteed a perfect trial, only a fair trial. The retrials have been sought by defendant and granted by the courts in the effort to assure a careful review and a fair trial in a capital case, and it is absurd to suggest that the actions of the trial judge and prosecutor under these circumstances give rise to delay that entitles defendant to claim a speedy trial violation.

In addition, there is no mandate from the United States Supreme Court that delay in the appellate process or delay caused by one or more retrials must be subjected to the tests of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), when asserted as speedy trial violations.

In *Rheuark v. Shaw*, 628 F.2d 297 (1980), the Fifth Circuit Court of Appeals held that although the Constitution does not require the states to afford a right to appellate review of criminal convictions, when they do provide a right of appeal, it must meet the requirements of due process and equal protection but that not every delay, even an inordinate one, violates due process. That court concluded that a claim that appellate delays violated due process should be subjected to an ad hoc evaluation of the *Barker* factors in light of the interests of defendants that the speedy trial right was designed to protect. 628 F.2d 297, 302–303.

■ There are other cases holding that the right to a speedy trial is inapplicable to state appellate proceedings because the in-

terests of the defendant identified in *Barker* (i.e., prevention of oppressive pre-trial incarceration, minimization of the anxiety and concern accompanying public accusation and limitation of possibility that delay will impair the accused's ability to defend himself) have no application when the accused has already been convicted of an offense. *See Sands v. Cunningham*, 617 F.Supp. 1551 (D.N.H.1985) and cases cited therein at 1566. We concur in that assessment of a speedy trial claim applicable to the appellate process. Whether or not such a delay may give rise to a due process claim and the standards to be applied to such a determination need not be decided upon this record because the facts do not invoke that issue.

■ Defendant contends that the Tennessee Death Penalty Statute is unconstitutional as cruel and unusual punishment. We rejected that contention in *State v. Dicks*, 615 S.W.2d 126 (Tenn.1981), and a number of later cases. Defendant also says that the use of electrocution, when there are more humane forms of legal killing, such as lethal injection, violates the constitutional prohibition against cruel and unusual punishment. The validity and humanity of that complaint should be addressed to the Legislature. This Court's authority over punishment for crime ends with the adjudication of constitutionality.

Defendant asserts error in denying his pre-trial motion to be allowed to show the jury a film of an execution and to present testimony as to how the electric chair functions. We have held that only evidence relevant to aggravating and mitigating circumstances may be adduced at the sentencing hearing in a capital case. *See, e.g. Cozzolino v. State*, 584 S.W.2d 765 (Tenn. 1979). We have also held that an expert's opinion on the deterrent effect of the death penalty is irrelevant at a sentencing hearing. *State v. Johnson*, 632 S.W.2d 542 (Tenn.1982).

■ Defendant says it was error to allow the State to show his conviction for aggravated assault on Shirley Bell as a "previous" conviction in support of the ag-

gravating circumstance defined in T.C.A. § 39–2–203(i)(2) (previous conviction of a felony involving violence to the person). The indictment for that offense was pending at the time of the first trial but the conviction was obtained prior to the resentencing hearing. In *State v. Teague,* 680 S.W.2d 785 (Tenn.1984), we held that a conviction obtained after the first trial but before a resentencing hearing may be used as a previous conviction at the resentencing hearing.

■ Defendant erroneously contends that in its opinion on the first appeal this Court held the introduction of defendant's indictment for this offense to be error. As stated heretofore in this opinion, we held that proof of that indictment for the offense of aggravated assault, returned a few days before the murder, was properly admitted to support the State's theory that defendant killed Junior Adams to eliminate him as a witness against defendant at his trial for shooting Shirley Bell. 653 S.W.2d at 716. Defendant's related complaint that, if the State had not erred so as to necessitate a resentencing trial, this interim conviction would not have been available to the State and thus should be inadmissible is a non sequitur.

■ Defendant says the trial judge erred in denying him the right to attempt to rehabilitate two prospective jurors who were opposed to the death penalty. Wallace W. Larkins was unequivocal in stating that he was conscientiously opposed to the death penalty and that his views would prevent the performance of his duties as a juror. The interrogation of prospective juror Terry Dockery covered nineteen pages in the transcript. Although he gave equivocal answers at first, later he unequivocally stated that he could not vote the death penalty and would not sign a verdict imposing it under any circumstances. When the trial judge announced that Dockery was excused, defense counsel sought permission to ask two additional questions, which was denied. We find both jurors were properly excused under the guidelines of *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

■ Defendant complains about the admission of several exhibits. First he says that Exhibit One, a copy of the court's minutes dated September 30, 1965, reflecting the conviction of defendant for second degree murder and a sentence of ten years, should have been stricken. His complaint was that the "witness never agreed nor was requested" to have the document made an exhibit to her testimony. It is the prerogative of the trial judge, not witnesses, to allow or disallow the introduction of documents into evidence. The record shows that the prosecuting attorney asked the court to have it marked for identification and it was so marked. The transcript reflects that Mrs. Young, the Deputy Clerk, read the contents of the minute entry into evidence in the presence of the jury; and the failure of the District Attorney to allow Exhibit One for identification to be marked Exhibit One in evidence was harmless error beyond a reasonable doubt.

The other exhibits about which defendant complains were the capias issued a few days before the murder for the arrest of defendant on the charges growing out of the shooting of Shirley Bell and the indictment and the conviction of defendant for the offense of aggravated assault on Shirley Bell. Defendant again asserts in error that we reversed the first sentencing hearing because of the introduction of the indictment of Shirley Bell. The evidence about the shooting of Shirley Bell and the indictment and arrest of defendant, the timing of those events in relation to the murder of Junior Adams and the conviction on that indictment were fully developed through the direct testimony of witnesses. Again, if it be conceded that the capias and the indictment were technically inadmissible, they were mere surplus and harmless error beyond a reasonable doubt under the circumstances of this trial.

Defendant says the trial judge failed to perform his function as thirteenth juror in that he did not approve the jury's verdict. That is factually incorrect. The trial judge approved the verdict from the bench while the jury was still in the courtroom. The trial judge also expressly approved the jury

verdict in the order overruling defendant's motion for new trial. Defendant also says that the trial judge's actions were "in violation of the rulings in *Helton v. State,* 547 S.W.2d 564 (Tenn.1977), as upheld in *State v. Davis,* 613 S.W.2d 218 (Tenn.1981)." That contention involves a misreading of both cases. Nothing said in either case has any relevancy whatever to the actions of the trial judge as alleged by defendant or to his actions as reflected by the record.

■ Defendant asserts that the trial judge committed error in a "speech" to the jury after their verdict was rendered. Defendant describes it as a history of the case and the court's personal opinions and alleges that he [defendant] feels totally precluded from discovering any juror misconduct as a result of the speech. Defendant obviously refers to the trial judge's post-verdict explanation of why he did not admit Burroughs' testimony about Morton's alleged death bed confession and of the investigation that followed Burroughs' revelation of that confession. The trial judge explained to the jury that he was about to discharge that there would be newspaper coverage of Burroughs' testimony and he wanted to put it into proper focus so as to allay any doubts they might have about the correctness of their verdict. Defendant cites no authority in support of his complaint and we find it to be completely lacking in merit.

Contrary to defendant's claim, the record shows that the trial judge correctly defined second degree murder as required because of the State's reliance on defendant's 1965 conviction for that offense, in support of aggravating circumstance (i)(2). *See, e.g., State v. Moore,* 614 S.W.2d 348 (Tenn. 1981).

Defendant says the trial judge erred in his response to a question asked by the jury during their deliberations. They asked if they were "obligated" to return the death penalty if they found one or more aggravating circumstances and no mitigating circumstances. The court advised counsel for defendant and the prosecuting attorney of the question, and defense counsel wanted the court to instruct only that they must look to the whole charge as

given before their deliberations began. The trial judge declined that request. He directed the jury to page five of the written charge and re-read the instruction on that page to the effect that, if they found at least one aggravating circumstance and that the aggravating circumstance outweighed any mitigating circumstances, the sentence shall be death. The trial judge also cautioned them not to place undue emphasis on that particular charge but to consider the charge as a whole.

■ Defendant says that the question the jury was really asking was whether it was mandatory that they return the death sentence. The record simply does not support such an interpretation of the specific written question submitted to the trial judge by the jury, to-wit: "If the jury finds that there are one or more aggravating circumstances, and no mitigating circumstances, is the jury obligated under the law to return a death penalty?" The trial judge correctly focused upon the portion of his prior instructions that contained the answer to the question the jury submitted to him, i.e., that they were not obligated to return the death penalty unless at least one aggravating circumstance outweighed any mitigating circumstances. What this Court said in *State v. Johnson,* 698 S.W.2d 631 (Tenn.1985), with respect to a preferable response was in a context different from the instant case; but even if on all fours, *State v. Johnson* would not require a holding that the trial judge erred in his response to the jury's question in this case. There is no merit to this issue.

Finally, defendant insists that he should be entitled to a new trial because the third sentencing jury considered the actions of prior juries in arriving at their verdict. This oblique attack on the resentencing procedure that allows a retrial of punishment only where prejudicial error occurred at the sentencing phase and no prejudicial error occurred during the guilt phase was prompted by remarks made by the jury foreman after the trial judge's post-verdict comments about Burroughs' inadmissible testimony. The foreman merely expressed the juror's recognition, and perhaps dis-

comfort, that they had not heard all of the evidence on the issue of guilt or innocence and had to rely upon a prior jury's verdict and assume that the prior jury "had done their job." Defendant acknowledges that the trial judge advised the jury that a previous jury had determined guilt and that he said nothing about the verdicts of prior juries on the issue of punishment. Defendant's complaint is that the third sentencing jury did rely on prior juries and such reliance on evidence "outside the record" was error under this Court's ruling in *State v. Harrington*, 627 S.W.2d 345 (Tenn.1981).

In *Harrington* we held it was error for the jury foreman to read selected Biblical passages to the jury during their deliberations in support of his belief that the death penalty should be imposed. Informing the jury at this resentencing hearing that there had been a prior trial that resulted in a jury verdict of guilt that had become final was an established fact in the record and a necessary preliminary instruction to the jury as essential background for the performance of their duties as a resentencing jury. This issue has no merit.

We have carefully considered all of the additional arguments made by defendant and found them to be without merit. Pursuant to T.C.A. § 39–2–205 we have reviewed the sentence of death in this case and are of the opinion that it was neither excessive nor disproportionate to the penalty imposed in similar cases.

The sentence of death is affirmed and will be carried out as provided by law on the 18th day of May, 1987, unless stayed by proper authority. Costs are adjudged against defendant.

COOPER, HARBISON and DROWOTA, JJ., concur.

BROCK, C.J., dissents, see separate opinion.

BROCK, Chief Justice, concurring in part; dissenting in part.

I concur in the opinion of the Court in all respects except the constitutionality of the death penalty. With respect to the constitutionality of the death penalty, I adhere to my views as set out in my dissenting opinion in *State v. Dicks*, Tenn., 615 S.W.2d 126, 132 (1981).