# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 11, 2000 Session

## STATE OF TENNESSEE v. TYRONE CHALMERS

Appeal from the Court of Criminal Appeals, Western Section
Criminal Court for Shelby County
No. 95-04473, 74     Carolyn W. Blackett, Judge

_____

### No. W1997-00174-SC-DDT-DD - Filed October 5, 2000

_____

The defendant was convicted of felony murder and especially aggravated robbery. The jury sentenced him to death after finding that the evidence of an aggravating circumstance – that the defendant was previously convicted of one or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person – outweighed evidence of mitigating circumstances beyond a reasonable doubt. The trial judge imposed a sentence of twenty years for the especially aggravated robbery conviction, to run concurrently with the death sentence but consecutively to sentences previously imposed in another case. On direct appeal, the Court of Criminal Appeals affirmed the convictions and sentences. We conclude that the State's introduction of evidence and subsequent argument concerning the specific facts and circumstances of the defendant's prior violent felony convictions do not mandate reversal under State v. Bigbee, 885 S.W.2d 797 (Tenn. 1994), that the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases, and that race is considered when performing comparative proportionality review to ensure that an aberrant death sentence was not imposed due to the defendant's race. Accordingly, we affirm the Court of Criminal Appeals in all respects.

### Tenn. Code Ann. § 39-13-206(a)(1) Automatic Appeal;
### Judgment of the Court of Criminal Appeals Affirmed

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and WILLIAM M. BARKER, J., joined. ADOLPHO A. BIRCH, JR., filed a concurring and dissenting opinion. FRANK F. DROWOTA, III, J., not participating.

Linda Kaye Garner, Memphis, Tennessee, for the appellant, Tyrone Chalmers.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Erik William Daab, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

In this capital case, the defendant, Tyrone Chalmers, was convicted of one count of felony murder and one count of especially aggravated robbery. The jury sentenced him to death after finding that the evidence of an aggravating circumstance – that the defendant was previously convicted of one or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person, see Tenn. Code Ann. § 39-13-204(i)(2) (Supp. 1994), – outweighed evidence of mitigating circumstances beyond a reasonable doubt. The trial judge imposed a sentence of twenty years for the especially aggravated robbery conviction, to run concurrently with the death sentence but consecutively to sentences previously imposed in another case.

On direct appeal, the Court of Criminal Appeals affirmed the convictions and the sentences imposed. The defendant appealed to this Court raising numerous issues. We entered an order designating the following issues for oral argument:[1] (1) whether plain error occurred, requiring reversal of the sentence in light of State v. Bigbee, 885 S.W.2d 797 (Tenn. 1994), and Tenn. Code Ann. § 39-13-204(c) (Supp. 1998), when the prosecution introduced evidence concerning the facts and circumstances underlying the defendant's prior violent felony convictions and when the prosecution referred to the circumstances of these prior violent felony convictions during argument; (2) whether the sentence of death in this case is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, and all other issues mandated by Tenn. Code Ann. § 39-13-206(c)(1) (Supp. 1994); and (3) whether and how the factor of race should be considered when performing comparative proportionality review.

We conclude that the State's introduction of evidence and subsequent argument concerning the specific facts and circumstances of the defendant's prior violent felony convictions do not mandate reversal under Bigbee. We further conclude that the evidence supports the jury's findings as to aggravating and mitigating circumstances and that the sentence of death was not imposed arbitrarily and is not excessive or disproportionate to the penalty imposed in similar cases. Lastly, we clarify that race is considered when performing comparative proportionality review to ensure that an aberrant death sentence was not imposed due to the defendant's race. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

**FACTUAL BACKGROUND**

At approximately 5:00 a.m. on August 20, 1994, the body of the African-American victim, 28-year-old Randy Allen, was discovered lying face down on the sidewalk next to Netherwood Street in Memphis. His pants and underwear had been pulled down around his ankles, and he had been shot five times. Two of the wounds, one to the head and another to the back, were fatal.

---

[1]"Prior to the setting of oral argument, the Court shall review the record and briefs and consider all errors assigned. The Court may enter an order designating those issues it wishes addressed at oral argument. . . ." Tenn. R. Sup. Ct. 12.2.

Ten days after the shooting, the 21-year-old African-American defendant admitted to Memphis police that he had killed the victim during a robbery. The defendant stated:

> I met up with "Dre" and "Black" on Orleans and So. Parkway near the park. "Black" was driving something like a [sic] Oldsmobile, "Dre" was in the front passenger seat and I got in the back seat. We were just riding around looking for somebody to rob. I had some kind of automatic rifle, it had a clip in it, black and brown color. "Dre" had a .380 automatic or something, look [sic] black to me. I think "Black" had a shotgun. "Black" was driving down Netherwood, and me and "Dre" jumped out on two boys.[2] We tried to rob them. We made them strip, then I had hit the one that was killed with the rifle and it went off, and I couldn't let the rifle go. Then me and "Dre" jumped in the car and left, with "Black" driving. Then "Black" dropped me and "Dre" off near a house, close to Southside School.

The defendant, who robbed Murphy and the victim of $3.00, estimated that he had fired six times. The defendant concluded his statement by remarking, "I'm sorry it ever happened. If I could go through it again, I wouldn't."

Based on this proof, the jury convicted the defendant of felony murder and especially aggravated robbery.[3]

During the sentencing phase, the State introduced evidence of the defendant's previous convictions for attempted especially aggravated robbery and attempted first degree murder for a criminal episode occurring on the same date as the present offenses. The Deputy Clerk for the Shelby County Criminal Court Clerk's Office testified that, according to the court records, Tyrone Chalmers was convicted of attempted especially aggravated robbery and attempted first degree murder on July 8, 1996, for offenses committed against Joseph Hunter on August 20, 1994. During cross-examination, defense counsel contested the clerk's identification of the defendant, asking, "[Y]ou have no way of knowing whether or not those documents that you have are in fact, belong to [sic] Tyrone Chalmers, do you? You have no personal knowledge yourself, do you?" Hunter, the victim of those prior crimes, then testified that he was driving home at approximately 2:55 a.m. on August 20, 1994, when the defendant stepped in front of his car, pointed a rifle at him, and told him

---

[2]These "two boys" were the victim and his cousin, Marlon Murphy. The defendant was also indicted for the aggravated robbery of Murphy, but the charge was dismissed due to Murphy's unavailability as a witness for the prosecution.

[3]We agree with the Court of Criminal Appeals that the evidence is sufficient to support the convictions. Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S. Ct. 39, 1 L. Ed. 2d 49 (1956).

to "give it up." According to Hunter, the defendant fired approximately fifteen rounds at him as he drove away, striking Hunter in the leg and arm.

The defendant presented the testimony of his mother and sister. His mother testified that the defendant was one of seven children, had graduated from high school, and had never given her any trouble. At the time of these offenses, the defendant was employed and was caring for his mother who suffered from diabetes. The defendant's sister described the defendant as "a very caring person" and her best friend. She conceded that he had been in juvenile court once but claimed that the victim of that offense had "actually committed a crime" against the defendant.

The last witness was the defendant, who testified that only hours before he committed these offenses he had been drinking alcohol and had smoked crack cocaine for the first time. He claimed that he could not remember what happened but did recall that the gun he used belonged to one of the accomplices. He admitted having been in juvenile court but asserted that the only criminal charges he had ever faced were those arising from the events of the early morning hours of August 20, 1994. The defendant told the victim's family that he was sorry and expressed his desire to take the victim's place if he could. On cross-examination, the defendant admitted that he tried to rob Hunter before he ever met up with Dre and Black.

Based on this proof, the jury sentenced the defendant to death.

## PROSECUTORIAL MISCONDUCT

As noted above, after introducing evidence at the sentencing hearing that the defendant was previously convicted of the attempted especially aggravated robbery and attempted first degree murder of Joseph Hunter, the State presented Hunter's testimony about the specific facts of those crimes. Later, during argument, the State referred to the circumstances concerning the offenses involving Hunter. The defendant did not object at trial and did not complain on appeal.

Generally, this Court will not consider issues not raised by the parties; however, plain error is a proper consideration for an appellate court whether properly assigned or not. State v. Taylor, 992 S.W.2d 941, 943-44 (Tenn. 1999). Plain error may be recognized pursuant to Tenn. R. Crim. P. 52(b) when a "substantial right" of the accused is affected and consideration of the error is "necessary to do substantial justice." In Bigbee, this Court held that it is inappropriate to admit evidence regarding specific facts of the crime resulting in the prior conviction when the prior conviction on its face shows that it involved violence or the threat of violence to the person. Bigbee, 885 S.W.2d at 811. This error combined with the prosecutor's improper argument, which among other things emphasized the circumstances of the prior conviction, required reversal of the death sentence in Bigbee. Id. at 812. In light of Bigbee, we asked the parties to address whether plain error requiring reversal occurred in this case.

The defendant asserts that evidence of the underlying facts of the defendant's prior convictions necessarily affected the jury's deliberations and effectively eliminated the option of life imprisonment as a sentence. See id. at 811 (citing State v. Smith, 755 S.W.2d 757, 767 (Tenn.

-4-

1988)).  The State counters that the evidence was admissible because it was necessary to respond to claims by the defense.  See id. at 812 (citing Cozzolino v. State, 584 S.W.2d 765, 767-68 (Tenn. 1979)).  The State further contends that, because the evidence was admissible, the argument based upon it was proper.

When a prosecutor has engaged in improper conduct, the test for determining whether there is reversible error is "whether the impropriety 'affected the verdict to the prejudice of the defendant.'"  Id. at 809 (quoting Harrington v. State, 215 Tenn. 338, 340, 385 S.W.2d 758, 759 (1965)).  In making this determination, the Court considers:  (1) the conduct complained of viewed in the light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case.  Id. (citing State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984)).

We have reviewed the record in this case and conclude that the prosecutor's conduct does not mandate reversal under Bigbee.  Hunter's testimony was relevant to respond to defense claims contesting identification of the defendant as the perpetrator of the prior offenses about which the clerk testified.  See Cozzolino, 584 S.W.2d at 768.  It was inappropriate, however, to introduce evidence of the facts and circumstances of those prior crimes that was not relevant to the identification issue.  The prosecutor could have elicited testimony from Hunter limited to Hunter's ability to identify the defendant.  Cf. State v. Dyle, 899 S.W.2d 607, 612 (Tenn. 1995) (holding that jury must be instructed that value of identification testimony may depend upon the witness's capacity and opportunity to observe the offender).

As for the argument, this case is distinguishable from Bigbee.  The argument in Bigbee was highly improper for several reasons, including:  emphasizing the character of the victim of the prior murder, informing the jury of the life sentence for that offense, implying that the defendant should be sentenced to death as punishment for the prior murder, and appealing to the jury to react out of vengeance.  Bigbee, 885 S.W.2d at 811-12.  The Court held that, although each of these errors might have been harmless standing alone, considered cumulatively, the improper prosecutorial argument and the admission of irrelevant evidence affected the jury's sentencing determination to the defendant's prejudice.  Id. at 812.

During opening argument at the sentencing phase in this case, the prosecutor did not mention the facts or even the specific convictions involving the Hunter offenses.  The prosecutor indicated only that the State would be relying on the aggravating circumstance that the defendant was previously convicted of one or more felonies, other than the present charge, which involved violence to the person.  During closing argument, the prosecutor did refer to the circumstances of the Hunter offenses when he stated in pertinent part:

> This man before you has been convicted of a crime that involved violence prior to this particular trial.  We not only put on the clerk to show that, we brought the victim to show you the nature of that offense.  This is not a violence where somebody gets hit or slapped,

-5-

pushed or knocked down. This violence involves an individual, Mr. Hunter, coming home, a man appears on the street, wants to take his car or whatever or his life. And, proceeds to shoot at him fifteen times and hit him two times. He gets away, barely. Less than two hours after that, this particular offense occurs. I submit to you that we have proven beyond a reasonable doubt that the defendant has been convicted of an offense of violence prior to this particular offense.

While it was proper to argue that Hunter's testimony had proven the aggravating circumstance beyond a reasonable doubt, the prosecutor engaged in improper argument by implying that the jury should consider the nature of the violence against the victim in the Hunter offenses. Cf. id. at 812 (holding that argument regarding victim of prior offense was improper). However, unlike Bigbee, the improper remarks in this case were not extensive. See also State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998). No curative measures were taken because the defendant failed to object. See id. The intent of the prosecutor in introducing Hunter's testimony was not improper in that the prosecutor was responding to defense claims that the evidence of the prior convictions was insufficient with regard to identification of the defendant as the perpetrator. The impropriety was limited to the introduction of the details of the Hunter offenses. Moreover, unlike Bigbee, the argument here was improper only in the respect that it implied that the jury should consider the nature of the violence against Hunter. The proof of the aggravating circumstance, even excluding the inadmissible evidence, was considerable, and the mitigating evidence was slight. The inadmissible evidence and the improper argument, considered cumulatively, did not affect the jury's sentencing determination to the defendant's prejudice. See Bigbee, 885 S.W.2d at 812. Any constitutional error was harmless beyond a reasonable doubt. See id. at 809; see also State v. Howell, 868 S.W.2d 238, 260 (Tenn. 1993). Because we find no reversible error, we need not address the State's assertion that reversal is not warranted in light of Tenn. Code Ann. § 39-13-204(c) (Supp. 1998).[4]

---

[4]After sentencing in this case, Tenn. Code Ann. § 39-13-204(c) was amended to add the following language:

> In all cases where the state relies upon the aggravating factor that the defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person, either party shall be permitted to introduce evidence concerning the facts and circumstances of the prior conviction. Such evidence shall not be construed to pose a danger of creating unfair prejudice, confusing the issues, or misleading the jury and shall not be subject to exclusion on the ground that the probative value of such evidence is outweighed by prejudice to either party. Such evidence shall be used by the jury in determining the weight to be accorded the aggravating factor.

Tenn. Code Ann. § 39-13-204(c) (Supp. 1998).

## COMPARATIVE PROPORTIONALITY REVIEW

The defendant contends that his sentence is disproportionate to the penalty imposed in similar cases. Pursuant to Tenn. Code Ann. § 39-13-206(c)(1)(D) (Supp. 1994), the Court conducts a comparative proportionality review to ensure that no aberrant death sentence is affirmed. State v. Blanton, 975 S.W.2d 269, 281 (Tenn. 1998). In performing our comparative proportionality function, we have consistently employed the precedent-seeking approach, which compares the case at issue with other cases in which defendants were convicted of the same or similar crimes. State v. Bland, 958 S.W.2d 651, 664 (Tenn. 1997). Factors relevant to the process of identification and comparison of similar cases include: (1) the means of death; (2) the manner of death (e.g., violent, torturous, etc.); (3) the motivation for the killing; (4) the place of death; (5) the similarity of the victims' circumstances including age, physical and mental conditions, and the victims' treatment during the killing; (6) the absence or presence of premeditation; (7) the absence or presence of provocation; (8) the absence or presence of justification; and (9) the injury to and effects on non-decedent victims. Id. at 667. Factors relevant to comparison of the characteristics of defendants include: (1) the defendant's prior criminal record or prior criminal activity; (2) the defendant's age, race, and gender; (3) the defendant's mental, emotional or physical condition; (4) the defendant's involvement or role in the murder; (5) the defendant's cooperation with authorities; (6) the defendant's remorse; (7) the defendant's knowledge of helplessness of victim(s); and (8) the defendant's capacity for rehabilitation. Id.

The present case is similar to numerous cases in which the sentence of death was affirmed by this Court. We have reviewed and upheld the death sentence on direct appeal in the following cases involving the shooting of a randomly chosen victim during a robbery: State v. Smith, 993 S.W.2d 6 (Tenn. 1999); State v. Burns, 979 S.W.2d 276 (Tenn. 1998); State v. Howell, 868 S.W.2d 238 (Tenn. 1993); State v. Boyd, 797 S.W.2d 589 (Tenn. 1990); State v. Johnson, 762 S.W.2d 110 (Tenn. 1988); State v. Bobo, 727 S.W.2d 945 (Tenn. 1987); State v. Sparks, 727 S.W.2d 480 (Tenn. 1987); State v. Harries, 657 S.W.2d 414 (Tenn. 1983); State v. Coleman, 619 S.W.2d 112 (Tenn. 1981). In addition to Smith, supra, other cases in which we have upheld the death sentence based on the sole aggravating circumstance of a prior violent felony conviction include State v. Adkins, 725 S.W.2d 660 (Tenn. 1987), and State v. Goad, 707 S.W.2d 846 (Tenn. 1986).

We have considered the defendant's argument that he should have received a life sentence because he committed an act totally alien to his character while under the influence of drugs. To the contrary, the defendant's own witnesses established that he had been in juvenile court on another matter before the incidents of August 20, 1994. The record supports the jury's finding that the aggravating circumstance of prior violent felony convictions outweighed any mitigating circumstances beyond a reasonable doubt. Based upon the strength of this aggravating circumstance and the similarity of this case to other cases in which the death penalty was imposed, we conclude that the death sentence in this case is not disproportionate.

**RACE AS A FACTOR IN PROPORTIONALITY ANALYSIS**

The defendant does not allege and there is no indication that the jury's sentencing determination in this case was based upon race. Nevertheless, the State suggests a need for clarification regarding the use of race in proportionality analysis. In <u>Bland</u>, the Court listed race, along with age and gender, as one of the factors to be considered when comparing characteristics of defendants. 958 S.W.2d at 667. In applying the <u>Bland</u> factors to the defendant in <u>State v. Pike</u>, 978 S.W.2d 904 (Tenn. 1998), the Court noted that "[w]hile Pike is only the second woman to receive the death sentence in Tennessee, there is absolutely no indication that the jury's imposition of the death sentence was motivated by or based upon Pike's gender." <u>Id.</u> at 919. Likewise, race is considered when performing comparative proportionality review to ensure that an aberrant death sentence was not imposed due to the defendant's race.

**CONCLUSION**

In accordance with the mandate of Tenn. Code Ann. § 39-13-206(c)(1) (Supp. 1994) and the principles adopted in prior decisions of this Court, we have considered the entire record in this case and conclude that the sentence of death was not imposed in an arbitrary fashion, that the evidence supports the jury's finding of the statutory aggravating circumstance, that the evidence supports the jury's finding that the aggravating circumstance outweighed mitigating circumstances beyond a reasonable doubt, and that the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant. We have carefully reviewed all of the issues raised by the defendant and the issue we raised regarding the State's introduction of evidence and subsequent argument concerning the specific facts and circumstances of the defendant's prior violent felony convictions, and we have determined that these issues are without merit or do not require reversal. With respect to issues not specifically addressed in this opinion, we affirm the decision of the Court of Criminal Appeals, authored by Judge Gary R. Wade and joined in by Judges Thomas T. Woodall and John Everett Williams. Relevant portions of that opinion are attached as an appendix to this opinion. The defendant's sentence of death is affirmed and shall be carried out on the 9th day of February, 2001, unless otherwise ordered by this Court or proper authority.

It appearing from the record that the appellant is indigent, costs of this appeal are assessed to the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE