# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 14, 2001 Session

## STATE OF TENNESSEE v. TIMOTHY McKINNEY

**Automatic Appeal from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**Nos. 98-01434, 98-01435    Joseph B. Dailey, Judge**

---

**NO. W1999-00844-SC-DDT-DD - Filed March 26, 2002**

---

ADOLPHO A. BIRCH, JR., J., concurring and dissenting.

I concur in the decision to affirm the defendant's convictions in this case. I dissent, however, from the imposition of the death penalty because of my continuing remonstration against the comparative proportionality review protocol imposed by the majority.[1]  Beginning with State v. Chalmers, I have repeatedly called for improvement of our approach to comparative proportionality review.  28 S.W.3d 913, 923-25 (Tenn. 2000) (Birch, J., concurring and dissenting); see also, e.g., State v. Carruthers, 35 S.W.3d 516, 581 (Tenn. 2000) (Birch, J., concurring and dissenting); State v. Keen, 31 S.W.3d 196, 234 (Tenn. 2000) (Birch, J., concurring and dissenting).  I have identified three shortcomings in the current protocol: "the 'test' we employ [for comparative proportionality review] is so broad that nearly any sentence could be found proportionate; our review procedures are too subjective; and the 'pool' of cases which are reviewed for proportionality is too small." Chalmers, 28 S.W.3d at 923 (Birch, J., concurring and dissenting).

---

[1]On a national level, there is rapidly growing dissatisfaction with comparative proportionality review methods such as the one employed by the majority.  Recently, comparative proportionality review and other capital punishment issues were addressed in a major death penalty study by the Constitution Project, a bipartisan organization which offers solutions to contemporary constitutional and governance issues.  See generally The Constitution Project, Mandatory Justice:  Eighteen Reforms to the Death Penalty (2001), available at http://www.constitutionproject.org/dpi/index.html (last visited February 28, 2002).  The study, which seeks to improve justice, fairness, and efficiency in the implementation of capital punishment, recommends that states adopt procedures that "(1) ensure that the death penalty is being administered in a rational, non-arbitrary, and even-handed manner, (2) provide a check on broad prosecutorial discretion, and (3) prevent discrimination from playing a role in the capital decision-making process."  Id. at 27. Although the study acknowledges that formulating a proportionality review protocol is problematic, it notes that many commentators have suggested that a system which includes all death-eligible cases in the comparison pool would be "more effective" than a protocol which compares only cases in which the death penalty was sought, as is done in Tennessee. Id. at 27-28.  In addition, the study suggests that states should "make a concerted effort to narrow by statute the universe of death-eligible cases to those that are especially heinous, premeditated, and unmitigated," for "[t]oo often, it has been politically expedient for states to keep adding to the list of categories of cases in which the death penalty may be imposed, arguably well beyond those sorts of cases for which the penalty was originally intended."  Id. at 28.

Recently, in State v. Godsey, I further elaborated upon the manner in which I would reform the protocol to ensure its reliability and accuracy:

> I would reform the Court's review protocol as follows: First, in order to more reliably identify disproportionate sentences, I would ask whether the case under review was more consistent with "life" or "death" cases, rather than requiring that the case be "plainly lacking in circumstances" comparable to death penalty cases. Second, I would expand the pool of comparison cases to include all first degree murder cases, not just those cases in which the State chose to seek the death penalty, and I would revamp the Court's Rule 12 database to ensure that it is complete, reliable, and accurate. Finally, I would more heavily emphasize objectivity in selecting which cases are "similar" to the case under review for the purposes of comparison.

60 S.W.3d 759, 798 (Birch, J., concurring and dissenting).

When the protocol I have proposed is applied to this case, I conclude that the sentence of death is not proportionate. To broadly summarize the long list of circumstances detailed by the majority, this case involves a 23-year-old male who shot the unarmed victim at a nightclub a few hours after some sort of argument with the victim. The shooting was not committed in the course of the commission of any other crime, though the defendant was convicted of attempted second degree murder due to a subsequent exchange of gunfire as he fled the scene. The jury found no statutory aggravating factors other than the defendant's prior felony conviction.

The case before the Court is significantly different from the cases relied upon by the majority for comparison. In addition to serious factual dissimilarities,[2] the juries in nearly all of the cases chosen by the majority found multiple statutory aggravating factors applicable. In those few cases

_____

[2]A complete list of the differences in the factual circumstances in all of the cases listed by the majority would be prohibitively lengthy. To provide examples, however, in State v. Stout, the defendant was convicted of felony murder, especially aggravated kidnapping, and especially aggravated robbery after he and three co-defendants located the female victim, decided to rob her, kidnapped her as she parked in front of her house, transported her to a remote location, and shot her in the head. 46 S.W.3d 689, 692-94 (Tenn. 2001). In addition to the i(2) aggravating factor, the jury found the i(6) and i(7) aggravating factors applicable. State v. Sims involved a victim who was shot in his home after he confronted the defendant and another man while the two were burglarizing his home. 45 S.W.3d 1, 5-6 (Tenn. 2001). In addition to the i(2) statutory aggravating factor found in this case, the jury found three additional factors, i(5), i(6), and i(7), applicable. Id. at 7. In State v. Henderson, the defendant was a prison inmate who shot a deputy sheriff while attempting an escape from custody after being taken for treatment to a dentist's office. 24 S.W.3d 307, 310-11 (Tenn. 2000). The jury found four statutory aggravating factors, i(3), i(6), i(7), and i(9), applicable. Id. at 312. The i(2) aggravating factor found in this case was not found by the jury in Henderson. Id.

In my view, the cases above and many of the other cases relied upon by the majority are so different in circumstances from the case under submission that it is questionable whether we should rely upon them as "similar" cases for the purposes of proportionality analysis.

cited by the majority where the sole aggravating circumstance relied upon by the jury was a prior violent felony, discrete distinctions exist which render those crimes more egregious than the one in the case under submission.

In both State v. Chalmers and State v. Smith, for example, the defendants killed their victims during the course of multiple, brutal robberies. See Chalmers, 28 S.W.3d at 915-16; State v. Smith, 993 S.W.2d 6, 9 (Tenn. 1999). In Chalmers, the defendant accosted the victim and another person, forced them to strip, then robbed the victim of $3 and shot him in the back. 28 S.W.3d at 916. Earlier in the evening, Chalmers had attempted to rob another victim, and when the victim fled, he shot the victim in the arm and the leg with a rifle. Id. In Smith, the defendant was involved in two deadly robberies of small grocery stores in the same night. 993 S.W.2d at 9. During the first robbery, a co-defendant shot and killed a store clerk; during the second the defendant shot and killed a co-owner of the store. Id. at 9-10. The defendant was convicted of two counts of first degree murder for the killings, though he received the death penalty only for the second killing. Id. The extended criminal conduct of the defendants in these two cases involve far more culpability than the conduct of the defendant in this case.

The killings in State v. Keough and State v. Adkins were, likewise, accompanied by circumstances that made those cases much more blameworthy than the case at hand. See State v. Keough, 18 S.W.3d 175 (Tenn. 2000); State v. Adkins, 725 S.W.2d 660 (Tenn. 1987). In Keough, the defendant apparently was motivated by a desire to kill his ex-wife and her male friend. 18 S.W.3d at 179. He first stabbed the ex-wife's friend multiple times in the chest, thigh, and back; he then stabbed the ex-wife to death and left her in her car. Id. In Adkins, the defendant's motive apparently was to silence a witness set to testify for the State. 725 S.W.2d at 662-63. The victim had witnessed the defendant shooting a woman in the stomach and told the defendant he intended to testify truthfully at trial. Id.[3] The defendant killed the victim shortly thereafter. Id. In my view, the additional crimes in Keough and the defendant's attempt in Adkins to undermine a lawful prosecution against him render those cases remarkably more serious than the case under submission.

Upon close examination, I conclude that this case is more consistent with cases in which a sentence of life (with or without the possibility of parole) was imposed. The majority has cited three such cases; although these cases differ somewhat from the case under submission, I would conclude that the case under submission, overall, has as much or more in common with these "life" cases than with the "death" cases relied upon by the majority. In addition, my review of this Court's Rule 12 database, in which data on first degree murder cases is compiled, suggests that there exists a large number of cases with circumstances similar to this one in which the State did not seek the death penalty.[4] For example, State v. Granderson,[5] State v. Mathis,[6] State v. Anglin,[7] State v. Gentry,[8] and

_____

[3]This was not the only prior violent felony relied upon as an aggravating factor. In addition to the shooting mentioned above, the defendant had served a prison sentence for second degree murder. Adkins, 725 S.W.2d at 661.

[4]It is unclear from the Rule 12 database how many similar cases there may be. It appears that a number of cases in the database contain incomplete information, and there is some evidence that many relevant cases may be

(continued...)

State v. Lewis[9] exhibit similar circumstances in that all of these cases involve defendants who killed single victims, usually after an altercation, but not in the course of the commission of any other crime. While these cases represent a small sample, they indicate that numerous similar cases exist in which the State has not sought the death penalty. The majority ignores these cases in its analysis, but I would not, and I conclude that the case under submission is more consistent with typical "life" cases in Tennessee than with the "death" cases upon which the majority relies.

Accordingly, although I concur in the majority's decision to affirm McKinney's conviction, I cannot agree that the death penalty is a proportionate and condign punishment in this case. I would reverse the sentence of death and remand the case for re-sentencing.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[4](...continued)
missing from the database. See generally State v. Godsey, 60 S.W.3d 759, 795-96 (Tenn. 2001) (Birch, J., dissenting).

[5]No. 02C01-9712-CR-00466, 1998 Tenn. Crim. App. LEXIS 841 (Tenn. Crim. App. 1998).

[6]No. 88-268-III, 1989 Tenn. Crim. App. LEXIS 622 (Tenn. Crim. App. 1989).

[7]No. 01C01-9403-CC-00106, 1998 Tenn. Crim. App. LEXIS 890 (Tenn. Crim. App. 1998).

[8]881 S.W.2d 1 (Tenn. Crim. App. 1993).

[9]No. 01C01-9604-CR-00162, 1999 Tenn. Crim. App. LEXIS 374 (Tenn. Crim. App. 1999).